UNITED STATES of America, Appellee,

v.

Richard Alan BRADY, Frank Pontillo, also known as Franky Steel, Robert Montano, Michael DeMatteo and John Pate, Defendants–Appellants.

Nos. 590, 613, 760, 762, 842, Dockets 93–1215, 93–1220, 93–1251, 93–1252, 93–1618.

United States Court of Appeals, Second Circuit.

Argued March 7, 1994.

Decided May 13, 1994.

Michael G. Considine, Asst. U.S. Atty., E.D. of N.Y., Brooklyn, NY (Zachary W. Carter, U.S. Atty., E.D. of N.Y., David C. James and Valerie Caproni, Asst. U.S. Attys., E.D. of N.Y., of counsel), for appellee.

William M. Kunstler, Kunstler & Kuby, New York City, for defendant-appellant Richard Alan Brady.

Barbara L. Hartung, New York City, for defendant-appellant Frank Pontillo.

Christine E. Yaris, New York City (Joel Cohen, of counsel), for defendant-appellant Robert Montano.

Paul Greenfield, Crupain & Greenfield, New York City, for defendant-appellant Michael DeMatteo.

Before: CARDAMONE, MINER, Circuit Judges, and PARKER, Chief District Judge.[*]

PARKER, Chief District Judge:

The defendants-appellants appeal from judgments of conviction entered on March 23, 1993 in the United States District Court for the Eastern District of New York, following a three-week jury trial before the Honorable I. Leo Glasser. All defendants-appellants were convicted on a six-count superseding indictment charging them with participating in a conspiracy to commit murder for the purpose of increasing their positions within a criminal enterprise in violation of 18 U.S.C. § 1959(a)(5) and with using and carrying firearms during the course of a crime of violence in violation of 18 U.S.C. § 924(c). Defendants-appellants Brady and Pontillo were also charged with and convicted of participating in a conspiracy to collect unlawful debts in violation of 18 U.S.C. § 1962, and defendant-appellant DeMatteo was convicted of unlawfully possessing a firearm as a felon in violation of 18 U.S.C. § 922(g). On appeal, the defendants-appellants[1] challenge their convictions claiming that the evidence was insufficient to support their convictions under the statutes charged, that certain evidentiary rulings were improper and unduly prejudicial, and that the trial court committed other miscellaneous errors. For the reasons stated below, we affirm the convictions.

## I.  BACKGROUND

The charges in this case arise from an internal war between opposing factions of the Colombo Crime Family of La Cosa Nostra. The Boss of the Colombo Crime Family, Carmine Persico, was imprisoned in 1986. Some time after his imprisonment, Persico appointed Victor Orena to administer the affairs of the Family and to assume the position of "acting boss" of the Family. By June of 1991, it became clear that Orena desired to change his status to "actual" rather than "acting" boss. A violent war erupted between those loyal to Orena, and those loyal to the imprisoned Persico. *See United States v. Scopo*, 19 F.3d 777, 779 (2d Cir. 1994); *United States v. Amato*, 15 F.3d 230, 233 (2d Cir.1994); *United States v. Orena*, 986 F.2d 628, 629 (2d Cir.1993). Three weeks after the war began, a truce was declared as a result of a meeting with other families of La Cosa Nostra. The war began again, however, on November 18, 1991, when someone from the Orena faction shot at Greg Scarpa, an acting captain in the Persico faction.

The superseding indictment in this case alleged that this war was waged to establish control of the Family. Each faction formed armed "hit teams" to monitor the movements of the other faction and to attempt to kill its members. The appellants are members of

---

[*] The Honorable Fred I. Parker, Chief District Judge, United States District Court for the District of Vermont, sitting by designation.

[1] Although John Pate originally filed notice of appeal, he subsequently withdrew his appeal and is no longer a party to this action.

the Persico faction whom (along with other Persico faction members)[2] the government charged with conspiracy to murder Orena faction members for the purpose of maintaining or increasing their positions in the Colombo Family of La Cosa Nostra, in violation of 18 U.S.C. § 1959(a)(5). The government also charged appellants under 18 U.S.C. § 924(c)(1) with using and carrying firearms during and relation to a crime of violence—the murder conspiracy in this case. Appellant DeMatteo was also charged with possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Appellants Brady and Pontillo were also charged with conspiracy to collect unlawful debts in violation of 18 U.S.C. § 1962(d). At trial, the government's evidence included testimony by F.B.I. Special Agent George Gabriel, court-authorized tape recordings, and the testimony of three cooperating co-conspirators—Joseph Ambrosino, Carmine Imbriale, and Alan Quattrache.

Gabriel testified as an expert about the structure of organized crime, and specifically the structure of La Cosa Nostra in New York. La Cosa Nostra is made up of five families, each headed by a boss. The family administration includes the boss, an underboss who advises the boss and acts as interim boss if the boss is incapacitated temporarily, and a consiglieri, who advises lower ranking family members and mediates disputes between them. Under the administration are captains or capos who head crews of soldiers or made men. Associates are often affiliated with made members. They include, either individuals aspiring to become members of the family or individuals committing crimes under the auspices of the family who are ineligible for membership because they lack Italian lineage. Noncriminal association with family members is insufficient to make one an "associate."

The cooperating witnesses' testimony detailed various conspiracies and unsuccessful attempts by Persico loyalists to murder Orena faction supporters. Ambrosino, Imbriale and Quattrache testified from personal experience about the internal war waged within the Colombo Family and other illegal activities that occurred during the war.[3] Their testimony revealed the appellants' involvement in various murder plots, particularly the April 1992 attempt to murder Louis "Bo–Bo" Malpeso, a "made member" of the Orena faction. Although he missed, Pontillo actually shot at Malpeso. The cooperating witnesses also linked these appellants to a murder plot against William "Wild Bill" Cutolo. In all, the cooperating witnesses detailed attempts to locate and murder at least seventeen different individuals.[4] The named defendants in this case were involved in some, but not all, of the murder plots.

The trial also included testimony concerning actual murders that occurred during the course of the war, but were not committed by the named defendants. The cooperating witnesses testified about the murders of four Orena faction members—Nicholas Grancio, Larry Lampese, Vinny Fusaro and John Minerva,[5] as well as the murders of Persico faction members Hank Smurra, "Black Sam" Nastasi, and Steven Mancusi. Ambrosino, Quattrache and F.B.I. Special Agent Christopher Favo all testified that Greg Scarpa, a crew leader associated with the Persico faction, shot Joseph "Joe Waverly" Caccace, an Orena faction member, in the stomach in February of 1992. Ambrosino also testified about the 1989 murder of Anthony Coluccio to which he pled guilty.

To corroborate the testimony of the three co-conspirator witnesses, the government in-

---

**2.** Appellants Robert Montano, Richard Alan Brady, Michael DeMatteo, John Pate and Frank Pontillo were co-defendants in the trial before Judge Glasser. Prior to the trial, five other co-defendants—Robert Donofrio, Joseph Legrano, Lawrence Micciolo, Joseph Sangiorgio, and Anthony Sayeh—pled guilty.

**3.** Ambrosino and Imbriale were both "associates" aligned with the Persico faction of the Colombo Family. Quattrache was a "made member" of the Family.

**4.** Joseph Amato, Pasquale "Patty" Amato, Joseph Campanella, William "Wild Bill" Cutolo, Alfonse "Funzi D" D'Ambrosio, Vincent "Chickie" DiMartino, Dominick Dionisio, Nicholas "Nicky Black" Grancio, Frank "Frankie Notch" Iannaci, Carmine Imbriale, Louis "Bo–Bo" Malpeso, Victor Orena, Joseph Russo, Gabriel Siana, Joseph Scopo, Frank Sparaco, and Michael Spatero.

**5.** Members of Jo–Jo Russo's crew and Greg Scarpa's crew, both aligned with the Persico faction, committed these murders.

troduced other evidence including address books, hotel records, cellular phones with programmed memories, and bulletproof vests. The government also introduced surveillance testimony of law enforcement officers and evidence seized during searches, including guns and ammunition, as well as a frequency chart and a scanner programmed with police frequencies. The tape-recorded evidence included conversations that occurred in Ambrosino's car. The participants in these conversations, including appellants DeMatteo, Brady, and Pontillo, discussed the war, its casualties and various murder plots against Orena faction members.

After a three-week trial before Judge Glasser in the United States District Court for the Eastern District of New York, a jury convicted the defendants on all counts. Pontillo, Brady, and Montano received sentences of 156 months imprisonment, three years of supervised release, and a $50 assessment for each count of conviction. DeMatteo received a sentence of 157 months of imprisonment, three years of supervised release, and a $50 assessment for each count.

## II. DISCUSSION

Appellants' challenges to their convictions include: (1) Montano and Brady's claim that evidence concerning murders not committed by any defendant was erroneously admitted and violated their due process rights; (2) Pontillo's claim that he was erroneously charged and convicted under 18 U.S.C. § 1959(a)(5) (conspiracy to commit murder in order to maintain or increase his position within the Colombo Family); and (3) DeMatteo's claim that his conviction for being a felon in possession of a firearm violates the Ex Post Facto clause of the United States Constitution. Their contentions are without merit.

**6.** Stated simply, the appellants complain that evidence of murders was admitted in a case in which there were "no murders." As counsel maintained throughout the trial, the defendants were the gang who couldn't shoot straight. Indeed, the evidence at trial showed that the defendants were not very adept at their attempts to murder Orena faction members. The murder plots consisted of a lot of talk and planning that did not materialize into action other than foiled

### A. Admission of Evidence Concerning Murders

Montano and Brady both claim that the trial judge erred in admitting evidence concerning murders that occurred during the war, but that did not involve any of the defendants in the present case.[6] A trial court's decision regarding the admissibility of evidence will be overturned only upon a showing of abuse of discretion. *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). Therefore, Judge Glasser's decision to allow testimony concerning uncharged murders may not be set aside unless there is a showing that he acted irrationally or arbitrarily, or otherwise abused his discretion. *See United States v. Coiro,* 922 F.2d 1008, 1015 (2d Cir.), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991) (citing *United States v. DiTommaso,* 817 F.2d 201, 217 (2d Cir.1987); *United States v. Robinson,* 560 F.2d 507, 514 (2d Cir.1977) (en banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978)). The record reveals that Judge Glasser did not abuse his discretion in allowing the government to elicit evidence concerning murders committed by other members and associates of the Colombo Family.

■ Appellants first argue that Judge Glasser erroneously admitted the evidence of actual murders as "other crimes" evidence pursuant to Fed.R.Evid. 404(b). Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In the context of Rule 404(b), "similar act evidence is relevant only if the jury can reasonably conclude ... that *the defendant was the actor.*" *Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988) (em-

attempts to locate potential victims and one shot that missed its mark. Nevertheless, substantial evidence demonstrated that the murder plots did exist and the defendants took steps, although ultimately unsuccessful, to accomplish their goals. *See United States v. Rosa,* 17 F.3d 1531, 1543 (2d Cir.1994) (conviction for conspiracy does not depend on the actual achievement of the conspirators' goal).

phasis added); *see also United States v. Cardall,* 885 F.2d 656, 671 (10th Cir.1989); *United States v. Diaz,* 878 F.2d 608, 616 (2d Cir.) (proof of acts by co-conspirators in conspiracy case is admissible and does not raise 404(b) question), *cert. denied,* 493 U.S. 993, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989).

Neither Montano, Brady nor their co-defendants committed any of the murders testified about at their trial. The record contains no indication that the government ever attempted to make such an implication, nor that the court permitted it to be made. Further, the evidence was never offered pursuant to Rule 404(b). Therefore, Rule 404(b) is inapplicable to the evidence presented in this case. The appellants' Rule 404(b) argument fails.

■ Appellants further argue that the evidence of murders was irrelevant and not probative of the crimes charged in the indictment. Evidence is probative if it tends to prove or actually does prove a proposition. *United States v. Jamil,* 707 F.2d 638, 642 (2d Cir.1983). The defendants were charged under 18 U.S.C. § 1959(a)(5), with having knowingly and intentionally conspired together with others to commit murders, for the purpose of maintaining and increasing their positions in the Colombo Family, an enterprise engaged in racketeering activity as defined in Title 18, United States Code, Section 1959(b)(1). The evidence of murders was direct proof of a disputed fact regarding the conspiracy charged, namely, the existence of a "violent internal war in the Colombo Family." [7] As Judge Glasser explained at least twice during discussions with counsel concerning objections to the challenged testimony, proof of the murders was admissible to prove the government's allegation that there was an internal war that was part and parcel of the charged conspiracy. Such evidence was also relevant to demonstrate the existence of the RICO enterprise and the charged conspiracy by members of the Persico faction to kill members of the Orena faction. This court has held that proof of crimes committed by other individuals in a RICO conspiracy is relevant to show the existence and nature of the enterprise. *United States v. DiNome,* 954 F.2d 839, 843–44 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992); *see also Coiro,* 922 F.2d at 1015–16 (evidence of narcotics dealing by someone other than defendant was admissible to prove enterprise and to inform the jury of the background of the charged conspiracy). Such a determination of relevance cannot be said to be arbitrary or irrational.

■ Appellants contend that the evidence of murders was so prejudicial as to deny them a fair trial. Pursuant to Fed.R.Evid. 403, they argue that the prejudicial effect of the challenged evidence substantially outweighed its "non-existent" probative value.[8] Rule 403 allows the exclusion of evidence where its "probative value is substantially outweighed by the danger of unfair prejudice." In the context of Rule 403, unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee Notes, Fed.R.Evid. 403. A trial judge is not required to mechanically recite his analysis of the admissibility of the evidence under Rule 403. *United States v. Pitre,* 960 F.2d 1112, 1120 (2d Cir.1992) (citing *United States v. Sliker,* 751 F.2d 477, 487 (2d Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985)).

■ The record indicates that the trial court carefully considered the potential prejudice that could be caused by the introduction of evidence concerning murders. Although Judge Glasser only explicitly ad-

---

**7.** Montano's counsel maintained at oral argument that she had no recollection that the defense ever said that there was no intrafamily war. On the contrary, the record reveals that a consistent defense theory pursued by all defendants at trial was to argue that the war did not exist. At trial, Pate's attorney stated that the war was a "figment of someone's imagination" and that the conspiracies were all "hype" and "nonsense." Pontillo's counsel referred to the "so-called war" and "so-called hit attempts." Montano's counsel at trial asserted that two of the cooperating witnesses "set the whole thing up." Accordingly, the existence of the war was a disputed fact.

**8.** As stated above, we find that the challenged evidence was indeed highly probative of the crimes charged.

dressed the potential prejudice of the challenged evidence once during the trial,[9] in deciding to admit evidence of actual murders at other points in the trial, he was aware of the defendants' claims of prejudice. Because the existence of the war was crucial to the government's proof and there was no suggestion that the defendants committed any of the murders at issue, we find that the evidence was not unduly prejudicial and was properly admitted. *See United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir.1991) (despite prejudicial impact, evidence of gruesome murders committed by non-defendants prior to defendant's association with group was admissible as probative of existence of charged enterprise and to show background of charges).

■ Finally, the trial court did not apply incorrect reasoning in admitting testimony concerning actual murders. Judge Glasser twice expressed the view that "for the purpose of attempting to prove a conspiracy to commit a crime you can prove the crime, to establish that in fact there was an agreement." Appellants argue that the murders introduced were not the subject of the conspiracy charged and thus were improperly admitted pursuant to this rule. Appellants contend that the conspiracy charged was a conspiracy to murder twenty specific individuals. On the contrary, the superseding indictment clearly states that the conspiracy was one to murder "members of the Orena faction of the Colombo Family." Thus, any murder of an Orena faction member that was committed by a Persico faction member fits the rule articulated by Judge Glasser.[10] This is true regardless of whether the appellants were actually involved in the specific murders. *See generally Pinkerton v. United States*, 328 U.S. 640, 645–48, 66 S.Ct. 1180,

1183–84, 90 L.Ed. 1489 (1946) (the scope of a conspiracy includes the acts of all of its members and is not limited to those acts in which any one member personally participated). Members of Scarpa's crew, aligned with the Persico faction, murdered Grancio, Lampese, and Fusaro, all Orena faction members. Members of Russo's crew, also aligned with the Persico faction, murdered Orena faction member Vinny Fusaro. Although none of the named defendants belonged to Scarpa's or Russo's crews, all were supporters of Persico, and thus part of the same conspiracy to murder Orena faction members.

■ The rule regarding evidence of crimes to prove the existence of an agreement does not apply, however, to the murders of Smurra, Nastasi and Mancusi who were Persico, not Orena, faction members. Even so, in allowing the evidence of actual murders, Judge Glasser did not act irrationally nor arbitrarily. The evidence was relevant to prove the existence of a war,[11] that in turn was essential to prove the existence of the conspiracy. It must be remembered that the appellants were not convicted of having committed these murders, but of having agreed to participate in a conspiracy to commit murders that were a part of the same internal struggle for control of the Family. Therefore, although the murders of Persico members could not be used to show the agreement, they were relevant to demonstrate the existence of the war, as well as to establish motivation to continue the killings.[12]

■ Appellants also contend that evidence of Carmine Sessa's murder of Anthony Coluccio should have been excluded because it occurred two years before the war began. They fail to state, however, that the govern-

---

**9.** The government indicated that it wanted to elicit a full list of the war casualties from Agent Favo. Judge Glasser denied the request, stating, "I don't see any purpose for that, except the obvious purpose, and I think it would be prejudicial and really have no probative value." Accordingly, Judge Glasser limited the government to asking specific questions concerning four incidents about which previous witnesses had testified.

**10.** All of the charged defendants were members of the Persico faction. The government proved

at trial that these defendants were members of a conspiracy to kill Orena faction members.

**11.** Even though the charged defendants had not successfully killed anyone, people were being killed.

**12.** Contrary to appellants' claims, there was sufficient evidence to support a rational juror's inference that appellants had knowledge of the murders at issue.

ment properly elicited the evidence of this murder through Ambrosino's direct testimony regarding the crimes to which he had pled guilty as a part of his cooperation agreement. *See Coonan,* 938 F.2d at 1561 (prosecution can avoid appearance that it was concealing impeachment evidence); *United States v. Cosentino,* 844 F.2d 30, 33 (2d Cir.) (government can develop impeaching material during direct examination to anticipate questions on cross that would give the impression it was concealing a relevant fact), *cert. denied,* 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988). Ambrosino had in fact pled guilty to the 1989 murder of Coluccio. Further, defense counsel did not object to the introduction of evidence concerning this murder at trial. In fact, defense counsel extensively explored Ambrosino's role in this murder on Ambrosino's cross-examination and that of Imbriale, and defense counsel emphasized Ambrosino's role in it during closing arguments.

Accordingly, we find that the District Court judge did not err in allowing evidence of actual murders to be elicited during the appellants' trial for conspiracy to commit murder.

### B. Failure to Establish an Essential Element of 18 U.S.C. § 1959

■ Pontillo, along with his co-defendants, was charged with conspiring to commit murder in order to maintain and increase his position in the Colombo Family. 18 U.S.C. § 1959(a)(5). On appeal, Pontillo contends that because he was not a "made member" of the Colombo Family, his conviction under that statute should be reversed.[13] His argument is merely semantic and is entirely without merit.

The "position-related motivation requirement" is an important element that must be satisfied to uphold a conviction under § 1959. *See United States v. Locascio,* 6 F.3d 924, 940–42 (2d Cir.1993) (convictions of Gotti and Locascio, Boss and Underboss of the Gambino Family, upheld despite Judge Glasser's occasional omission of language pointing out the motivation requirement of § 1959 during his charge to the jury). This essential element of the statute must be given its plain meaning. *See United States v. Concepcion,* 983 F.2d 369, 380 (2d Cir.1992) (defendant must hold a position in a RICO enterprise and commit an underlying crime of violence with a motive of retaining or enhancing that position). On this appeal, Pontillo challenges the district court's reading of the statute, claiming that only a "made member" of a crime family can hold a "position" in an enterprise under the plain meaning of the statute.

Pontillo points to the language of 18 U.S.C. § 1959(a) that provides in relevant part: "Whoever, ... for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders ... or conspires so to do, shall be punished...." Although the statute makes it illegal for individuals to commit violent crimes in order to gain entrance into a criminal enterprise, Pontillo was not indicted under that provision of the statute, nor did the jury charge include that portion of the statutory language.[14]

Pontillo notes that the government's cooperating witnesses testified that he was an "associate" of the Colombo Family and not a "made member." Therefore, he claims, that

---

**13.** At the trial, the court denied Pontillo's request that the jury be instructed that membership in a criminal enterprise is an essential element of 18 U.S.C. § 1959(a). He was convicted by the jury on all counts.

**14.** The superseding indictment charges him with conspiracy to murder for the purpose of increasing or maintaining his position within the family. Similarly, the court instructed the jury that they must find that

the defendant you are considering joined the conspiracy for the purpose of maintaining or increasing his position in the Colombo Orga-

nized Crime Family; that is, the enterprise which is charged.

In deciding whether it was the purpose of the defendant you are considering to maintain or increase his position in the enterprise—the Colombo Family—give the words "maintain" and "increase" their ordinary everyday meaning. For example, you may consider what position, if any, the defendant held in the enterprise and to what extent, if any, the commission of the crime charged served to maintain or uphold or increase his position in the enterprise.

he "was not a member of the Colombo Family nor did he hold any position in the Family." Agent Gabriel testified that an associate is an individual aspiring to become a member or who commits crimes under the protection of the family, but cannot become a member because of lack of Italian lineage. He also testified that individuals who have no interest in conducting criminal activity with the Family are also sometimes observed with organized crime members, but that noncriminal association with Family members is insufficient to make one an "associate."

Pontillo contends that because he was merely an associate, he had no position in the Family and thus was not properly charged or convicted under 18 U.S.C. § 1959.[15] As a "non-member" he claims he had no position within the enterprise to increase or maintain.[16] On the contrary, the testimony of Agent Gabriel and the superseding indictment itself make it clear that associates are considered to be members of the enterprise, even though they are not "made members" of the Family. Agent Gabriel's testimony reveals that associates play a significant role in organized crime operations. His testimony was confirmed by other evidence including the testimony of the cooperating witnesses who recounted significant criminal activity engaged in on behalf of the Family by associates, including Pontillo. Two of the cooperating witnesses, Ambrosino and Imbriale, were themselves associates, rather than made members. The first paragraph of the superseding indictment charges that "The members and associates of the Colombo Organized Family of La Cosa Nostra ("the Colombo Family") constituted an enterprise." Therefore, as an associate of the Colombo Family, Pontillo was a member of the enterprise charged by the government in its indictment. *See Concepcion,* 983 F.2d at 380.

The government presented evidence that Pontillo sought to improve his position within the enterprise: to move from associate to made member. Imbriale testified about conversations with Montano and Pontillo concerning the need to stay loyal to Carmine Sessa (*i.e.,* the Persico faction) in order to advance in the Colombo Family. Imbriale told Montano and Pontillo that if they stuck by Carmine, they would be taken care of when the war ended. Similar discussions occurred regarding DeMatteo's motivation for participating in the war, and Brady's eagerness to be "welcomed" into Michael Sessa's crew. Additionally, the reason for engaging in the internal war was to elevate the respective factions to supremacy within the Colombo Family. There was substantial evidence before the jury to support its conclusion that Pontillo, even as an associate, was a member of the enterprise who was participating in the murder conspiracy to improve his position in that organization.

### C. 1951 Felony As Predicate Offense Under 18 U.S.C. § 922(g)

DeMatteo contends that his 1951 felony conviction cannot serve as a predicate for the offense of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).[17] Because amendments to § 922 generally do not have retroactive application, *United States v. Brebner,* 951 F.2d 1017, 1020–22 (9th Cir.1991), he claims that his prior conviction cannot be a predicate offense under the statute. Therefore, he contends that application of the statute to the predicate violation

---

15. Because, according to his theory, he is not a member of the enterprise, he claims he can only be convicted under § 1959 if the government had charged him with and established that he joined the conspiracy in order to gain entrance into the enterprise. He claims that to hold otherwise would contradict the plain language of the statute which clearly reflects an intention to reach both those who act for the purpose of becoming a member of an enterprise, and those who want to improve their positions. His argument essentially is that he was a member of the first category that the statute tried to reach, but he was erroneously charged and tried under the second

category, and thus his conviction should be reversed.

16. He correctly states that he cannot be convicted of acting in order to improve someone else's position in the organization.

17. Title 18 § 922(g) provides in relevant part:
(g) It shall be unlawful for any person—
(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; ... [to] possess in or affecting commerce, any firearm or ammunition....

violates the Ex Post Facto clause of the United States Constitution. *See* U.S. Const., art. I, § 9, cl. 3.

■■■■ DeMatteo's claim is meritless. A criminal or penal law is ex post facto if it is retrospective and it disadvantages the offender affected by it. *United States v. Alkins*, 925 F.2d 541, 549 (2d Cir.1991). The critical question in evaluating an ex post facto claim "is whether the law changes the legal consequences of acts completed before its effective date." *Weaver v. Graham*, 450 U.S. 24, 31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981). A statute does not violate ex post facto principles where it applies to a crime that "began prior to, but continued after" the statute's effective date. *United States v. Alkins*, 925 F.2d 541, 549 (2d Cir.1991) (quoting *United States v. Torres*, 901 F.2d 205, 226 (2d Cir.1990)).

One of the principal aims of the Ex Post Facto clause is to ensure that individuals have fair notice of what conduct is criminally proscribed. *Id.* Courts have determined that Congress intended statutes prohibiting felons from possessing firearms to reach "persons convicted of felonies prior to [the effective date of the statute]." *United States v. Matassini*, 565 F.2d 1297, 1307 (5th Cir. 1978) (interpreting 18 U.S.C. § 1202(a)(1), the predecessor to § 922(g)); *see also United States v. Jordan*, 870 F.2d 1310, 1315 (7th Cir.) (although enhancement provisions of § 1202 became effective in 1984, fact that defendants' underlying convictions occurred in 1970 and 1972 does not violate the Ex Post Facto clause), *cert. denied*, 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989); *United States v. Sutton*, 521 F.2d 1385, 1390 (7th Cir.1975) (no ex post facto violation where Congress proscribes future activities of persons who have in the past engaged in conduct Congress has the power to proscribe).

■■■■ DeMatteo violated section 922(g) long after it became the law. Section 922(g) became effective in 1986. DeMatteo's possession of a gun from which the current conviction arises occurred on June 10, 1992.

Regardless of the date of DeMatteo's prior conviction, the crime of being a felon in possession of a firearm was not committed until after the effective date of the statute under which he was convicted. By 1992 DeMatteo had more than adequate notice that it was illegal for him to possess a firearm because of his status as a convicted felon, and he could have conformed his conduct to the requirements of the law. Therefore, the Ex Post Facto clause was not violated by the use of a 1951 felony conviction as a predicate for a violation of § 922(g).[18]

After examining the appellants' other points, we have determined that they are without merit.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

---

18. Appellant does not contend that his prior felony conviction had been expunged or his civil rights otherwise restored prior to the date he possessed a firearm in 1992. *See generally United States v. Huss*, 7 F.3d 1444 (9th Cir.1993); *United States v. Gillies*, 851 F.2d 492 (1st Cir.), *cert. denied*, 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988).