# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3606

_____

| | |
|---|---|
| United States of America,<br><br>    Plaintiff - Appellee,<br><br>v.<br><br>Robert Lee Pfeifer, also known as<br>Barney Pfeifer,<br><br>    Defendant - Appellant. | *<br>*<br>*<br>*<br>* Appeal from the United States<br>* District Court for the<br>* District of South Dakota.<br>*<br>*<br>*<br>* |

_____

Submitted: March 13, 2003
Filed: June 10, 2004

_____

Before HANSEN,[1] Chief Judge, JOHN R. GIBSON and LOKEN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Robert Lee Pfeifer conditionally pleaded guilty to possessing a firearm after being convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9). Pfeifer appeals his conviction on the following statutory and constitutional grounds: 1) he did not knowingly and intelligently waive the right to counsel in the predicate domestic violence conviction, as required by 18 U.S.C. §

_____

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

921(a)(33)(B) in order to obtain a conviction under § 922(g)(9); 2) as applied to him, § 922(g)(9) violates the Ex Post Facto Clause of the United States Constitution because it effectively increases the punishment for an earlier conviction; 3) § 922(g)(9) is unconstitutionally vague because it does not provide fair warning that his possession of a firearm is prohibited conduct; 4) § 922(g)(9) is unconstitutionally overreaching in that it interferes with his Second Amendment right to bear arms. We affirm.

## FACTS

On May 5, 1985, Robert Lee Pfeifer was involved in a disagreement with his wife, which ended with Pfeifer striking her in the face with his hand. He was subsequently charged by information with simple assault under S.D.C.L. section 22-18-1 in that he did "willfully and unlawfully, attempt to cause bodily injury to another, namely: Diane Pfeifer, and had the actual ability to cause the injury."

Pfeifer was arraigned on this charge on May 9, 1985, before Judge Donald Heck, a Circuit Judge of the Sixth Judicial Circuit, Pierre, South Dakota. The court informed Pfeifer that he was charged with simple assault and was entitled to have a lawyer at all stages of the proceedings and that, if necessary, one would be appointed for him at county expense. Pfeifer stated that he wanted to proceed without a lawyer. The court filed the information and read the charge to him in essentially the same language which we have set forth above. The court again told Pfeifer that he was charged with simple assault and informed him that it was a Class 1 misdemeanor. Pfeifer stated that he understood the charge.

Pfeifer was asked if he had been in the courtroom when another defendant, Mr. Odom, was advised of his constitutional and statutory rights. The court had informed Odom that he had the right to represent himself in person and to be represented by a lawyer. He had the right to a speedy public trial, to have compulsory process served

to obtain witnesses, and to confront and question the witnesses. If he entered a plea of not guilty, he would be presumed innocent, the burden would be on the State to prove the charge beyond a reasonable doubt, and he could be convicted only by a unanimous jury verdict. The entry of a guilty plea waived all of these constitutional and statutory rights. The court also informed Odom of certain driving-related consequences that would stem from a conviction for driving under the influence of alcohol, although this particular instruction had no direct bearing on Pfeifer's case. Pfeifer stated that he heard the rights explained to Odom and had no questions about them.

At the court's request, Pfeifer described the disagreement with his wife that gave rise to the assault charge. Pfeifer said he locked the door to their house because their older children were staying out too late. His wife disagreed and unlocked the door, and he relocked it. According to Pfeifer, "She went to unlock it again and I hit her." Based on Pfeifer's description of the events, the court found that the plea had been voluntarily given and that there was a factual basis for the charge contained in the information. The court accepted the guilty plea and found Pfeifer guilty as charged.

Both before and after his 1985 conviction, Pfeifer used firearms regularly for hunting, guide work, and as part of his work as a butcher. The simple assault conviction had no impact on his ability to possess firearms until eleven years later when Congress enacted 18 U.S.C. § 922(g)(9), which states: "It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . to possess in or affecting commerce, any firearm."

Although the record indicates that Pfeifer knew through various sources of the new law's applicability to him, he nonetheless went hunting with a rifle on November 10, 2001. He was subsequently charged with violating § 922(g)(9) and another subsection of § 922. The government later dismissed the second charge as part of a

-3-

plea agreement under which Pfeifer conditionally pleaded guilty to violating § 922(g)(9). The conditional nature of the guilty plea meant that Pfeifer could raise the appeals now before this court.

I.

Pfeifer argues that his conviction under 18 U.S.C. § 922(g)(9) should be reversed because he did not knowingly and intelligently waive the right to counsel in the predicate misdemeanor proceeding, as required by 18 U.S.C. § 921(a)(33). We review de novo the district court's refusal to dismiss an indictment based on its interpretation of a federal statute. United States v. Smith, 171 F.3d 617, 619 (8th Cir. 1999).

In 1996, Congress enacted § 922(g)(9), which states: "It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . to possess in or affecting commerce, any firearm." In defining the term "misdemeanor crime of domestic violence," § 921(a)(33)(B)(i) provides that an earlier misdemeanor conviction shall not count as a predicate offense for purposes of § 922(g)(9) unless the defendant "was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case."

The courts that have addressed the issue directly have interpreted § 921(a)(33)(B)(i) as creating a legal definition to be decided by the court as a matter of law rather than by a jury as an element of the crime. See United States v. Hartsock, 347 F.3d 1, 7 (1st Cir. 2003) (holding that absence of waiver is an affirmative defense); United States v. Akins, 276 F.3d 1141, 1145 (9th Cir. 2002) (same). The First Circuit is the only appellate court to have considered the allocation of the burden of proof on this issue. See Hartsock, 347 F.3d at 8-9 (concluding that the defendant bears both the burden of production and burden of persuasion). The proper allocation

-4-

of the burden of proof was not discussed by the parties in the instant case and does not affect the outcome.

In considering whether a defendant knowingly and intelligently waived counsel for purposes of § 922(g)(9) and § 921(a)(33)(B)(i), courts generally have applied the same principles that are used when analyzing waiver of counsel under the Sixth Amendment. See, e.g., 171 F.3d 617 at 621-22 (8th Cir. 1999); United States v. Jennings, 323 F.3d 263, 275-76 (4th Cir.) cert. denied, 124 S.Ct. 531 (2003). In particular, "any waiver of the right to counsel must be knowing, voluntary, and intelligent." Iowa v. Tovar, 124 S.Ct. 1379, 1387 (2004). A waiver is intelligent only if the defendant is "made aware of the dangers and disadvantages of self-representation" at the time of the waiver, "so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta v. California, 422 U.S. 806, 835 (1975) (internal citation omitted). During the pretrial stages of the criminal process, less vigorous warnings are typically adequate because "the full dangers and disadvantages of self-representation . . . are less substantial and more obvious to an accused than they are at trial." Tovar, 124 S.Ct. at 1382. Throughout the waiver inquiry, "[c]ourts must consider the particular facts and circumstances surrounding each case, including the background, experience, and conduct of the accused." Moore v. United States, 178 F.3d 994, 998 (8th Cir. 1999).

This court has considered the waiver issue in the context of a § 922(g)(9) offense on one other occasion. In Smith, 171 F.3d at 619, the defendant was charged with simple misdemeanor assault following a 1994 incident involving the mother of his child. The Iowa state court appointed counsel to represent the defendant, but counsel did not appear at the defendant's plea hearing. The state court asked the defendant if he wanted to go forward at the plea hearing despite counsel's absence. The defendant agreed, signed a written waiver form, and proceeded with a proposed plea agreement. Two years later, the defendant conditionally pleaded guilty to violating § 922(g)(9), with the 1994 conviction acting as the predicate domestic

violence offense. The defendant argued on appeal that he had not knowingly and intelligently waived his right to counsel in the predicate offense. We rejected his argument, holding:

> The evidence of Smith's written waiver, coupled with his prior invocation of his right to appointed counsel, and the acceptance of his waiver by the Iowa magistrate who took his plea, sufficiently show, and allow us to conclude as a matter of law, that Smith voluntarily and knowingly waived his right to counsel at the plea hearing for purposes of § 921(a)(33)(B).

Id. at 622.

The government argues, and the district court agreed, that Smith forecloses Pfeifer's argument regarding waiver of counsel. United States v. Pfeifer, 206 F.Supp.2d 1002, 1004 (D.S.D. 2002). However, like the analysis of waiver under the Sixth and Fourteenth Amendments, our determination of whether a defendant knowingly and intelligently waived counsel for purposes of § 921(a)(33)(B) depends on the facts and circumstances of each particular case. Cf. Edwards v. Arizona, 451 U.S. 477, 482 (1981); Moore, 178 F.3d at 998.

Unlike the defendant in Smith, Pfeifer never invoked his right to counsel or otherwise had counsel appointed to him during his 1985 assault case. Thus, one of the most important factors in Smith for finding a valid waiver – the prior invocation of his right to counsel – is missing here.

Nonetheless, other evidence in the record demonstrates that Pfeifer made a knowing and intelligent waiver. In particular, Pfeifer engaged in the following colloquy with the trial judge:

COURT: You're charged with simple assault. Do you have a lawyer?

-6-

DEFENDANT: No, I don't.

COURT: Do you want a lawyer to represent you?

DEFENDANT: No, I don't.

COURT: You understand that you're entitled to have a lawyer during all stages of these proceedings. If you don't have money or property to hire a lawyer, the Court will appoint one for you at county expense. You understand that?

DEFENDANT: I understand that.

COURT: You want to proceed without a lawyer?

DEFENDANT: I want to proceed without a lawyer.

The trial judge also advised Pfeifer, by reference to a discussion with a previous defendant, of the rights Pfeifer would be giving up by pleading guilty, including the right to a jury trial, the right to confront witnesses against him, and the right not to testify against himself. Taken together with the colloquy specifically dealing with waiver of counsel, this illustrates that Pfeifer made the decision to waive counsel "with eyes open." Faretta, 422 U.S. at 835 (1975); Tovar, 124 S.Ct. at 1389 (holding that the Sixth Amendment does not require a trial court to give a rigid and detailed admonishment of the usefulness of an attorney to a *pro se* defendant pleading guilty).

Despite the extensive discussion of his rights, Pfeifer asserts that his waiver of counsel was not knowing and intelligent because the trial court did not specifically inform him that he would (eventually) lose his right to possess firearms. In fact, the judge in the 1985 proceeding specifically informed the defendant in the case

-7-

immediately preceding Pfeifer's that certain driving-related consequences would follow from his guilty plea to a charge of driving under the influence of alcohol, but provided no such warnings to Pfeifer regarding his future ability to possess firearms.

This argument fails because the validity of Pfeifer's waiver of counsel simply does not hinge on the adequacy of the trial court's explanation of the consequences of a guilty plea. See, e.g., Tovar, 124 S.Ct. at 1389 (waiver may be knowing and intelligent even if the defendant "lacked a full and complete appreciation of all of the consequences flowing from his waiver"); cf. United States v. Lippman, 2004 WL 1172826 at *3 (8th Cir. 2004) (defendant may be convicted under § 922(g) even without knowledge of the law or an intent to violate it). We recognize the considerable unfairness of a situation where a defendant essentially acquiesces to a misdemeanor–and its correspondingly minor punishment–only to learn over a decade later that a newly-enacted law prevents him from lawfully possessing firearms. Nonetheless, the trial judge asked Pfeifer repeatedly if he wanted to proceed without an attorney, and Pfeifer stated each time that he did. Pfeifer indicated that he understood the rights he was waiving. He admitted his guilt on several occasions. Regardless of what Pfeifer knew about the future consequences of his conviction, it simply does not appear that his waiver of counsel was anything other than knowing and intelligent. See Smith, 171 F.3d at 621-22; United States v. Bethurum, 343 F.3d 712, 718 (5th Cir. 2003) (holding that a defendant's waivers of counsel and jury trial were valid for purposes of § 922(g)(9) even though he was not informed of the effect of his guilty plea on his ability to possess a firearm), cert. denied, 124 S.Ct. 1177 (2004); cf. United States v. Fountain, 83 F.3d 946, 950 (8th Cir. 1996) (holding that a defendant's guilty plea was valid despite the district court's failure to inform him that it could later be used to enhance a sentence for a different crime).

Because we conclude that Pfeifer's waiver of counsel was knowing and intelligent for purposes of § 921(a)(33)(B)(i), we reject this statutory challenge to his conviction.

## II.

Pfeifer next argues that as applied to him § 922(g)(9) violates the Ex Post Facto Clause, U.S. Const. Art. I § 9, cl. 3, because it effectively increases the punishment for his misdemeanor conviction from 17 years earlier. A statute violates the Ex Post Facto Clause if it applies to events occurring before its enactment and alters the definition of criminal conduct or increases the punishment for a crime. Lynce v. Mathis, 519 U.S. 433, 441 (1997). We review *de novo* questions arising under the federal constitution. United States v. Gary, 341 F.3d 829, 835 (8th Cir. 2003), cert. denied, 124 S.Ct. 1128 (2004).

Although the Eighth Circuit has not considered whether §922(g)(9) violates the Ex Post Facto Clause when applied to a defendant who committed the predicate offense prior to the enactment of §922(g)(9), other courts have concluded that it does not. See United States v. Hemmings, 258 F.3d 587, 594 (7th Cir. 2001); United States v. Mitchell, 209 F.3d 319, 322-23 (4th Cir. 2000); cf. United States v. Brady, 26 F.3d 282, 290-91 (2d Cir. 1994) (upholding conviction under felon in possession statute even where predicate felony conviction occurred decades before enactment of the statute). The critical factor in these decisions is that the prohibited conduct–possession of a firearm–occurred after enactment of the statute. See Mitchell, 209 F.3d at 322-23 ("As it is undisputed that [the defendant] possessed the firearm after the enactment of § 922(g)(9), the law's application does not run afoul of the ex post facto prohibition"). It is immaterial that the predicate offense occurred before § 922(g)(9) was enacted. "A law is not retroactive simply because it 'draws upon antecedent facts for its operation.'" Hemmings, 258 F.3d at 594 (quoting Cox v. Hart, 260 U.S. 427, 435 (1922)).

Because Pfeifer possessed a firearm after the enactment of § 922(g)(9), we adopt the reasoning of our sister circuits and conclude that his conviction does not violate the Ex Post Facto Clause.

Pfeifer next argues that § 922(g)(9) is unconstitutionally vague, in violation of his Fifth Amendment right to due process of law. In particular, Pfeifer asserts that §922(g)(9) does not provide fair warning that his possession of a firearm is prohibited conduct.

This court considered vagueness challenges to § 922(g)(9) in United States v. Hutzell, 217 F.3d 966 (8th Cir. 2000), and Smith, 171 F.3d at 622-23. In Hutzell, the defendant pleaded guilty to "domestic abuse assault," a misdemeanor, six months before Congress enacted § 922(g)(9). Id. at 967. More than two years later, the defendant fired a gun during an argument and was charged with violating § 922(g)(9). Id. He moved to dismiss the indictment on the ground that no one "could be presumed to have had notice that the conduct described in [§922(g)(9)] was in fact unlawful." Id. at 968. We rejected his challenge, explaining that "everyone knows" the possession of firearms is a highly regulated activity, and that "an individual's domestic violence conviction should itself put that person on notice that subsequent possession of a gun might well be subject to regulation." Id. at 968-69. Other courts have reached the same conclusion. See United States v. Hancock, 231 F.3d 557, 564 (9th Cir. 2000); United States v. Beavers, 206 F.3d 706, 710 (6th Cir. 2000).

In Smith, we addressed a slightly different issue, which is perhaps more relevant here: the propriety of a conviction under § 922(g)(9) where the predicate offense occurred under a general assault statute, rather than a statute that specifically mentioned "domestic abuse." 171 F.3d at 622-23. The defendant in Smith argued that the general nature of the assault statute prevented him from having a constitutionally sufficient level of notice that his possession of firearms was unlawful. Id. We held: "The fact that Smith could have been convicted under two misdemeanor statutes, one of which was arguably more applicable to the proscribed conduct, does not negate notice that conviction under the other similarly relevant misdemeanor

statute could also serve as a predicate offense for §922(g)(9)." Id. at 623; accord United States v. Denis, 297 F.3d 25, 30-31 (1st Cir. 2002) (rejecting nearly identical challenge to conviction under §922(g)(9)); United States v. Mitchell, 209 F.3d at 323-24.

In addition to the binding effect of Smith, Pfeifer's due process claim is precluded by the overwhelming evidence in the record showing that he had actual notice of the law prohibiting his possession of firearms. In 1996, Pfeifer forfeited custody of his firearms after having a protective order obtained against him in the course of his divorce. At the expiration of the protective order three years later, Pfeifer attempted to regain possession of his firearms from the Sheriff. The Sheriff informed Pfeifer that the new federal law prevented him from legally possessing firearms, and therefore refused to return them.

Pfeifer's awareness of §922(g)(9) is further illustrated by a motion he filed in a South Dakota court in February 2000 to have his 1985 conviction expunged. A hearing on that motion included the following exchange between the court and John Arrabito, Pfeifer's attorney, regarding the effect of Pfeifer's 1985 conviction:

> MR. ARRABITO: ... I'm assuming that the State is arguing that this crime of simple assault because it was an assault of a family member would reach a broad definition of a crime of domestic violence. I don't think it was specifically defined as a misdemeanor crime of domestic violence in 1985 at that time. However –
>
> THE COURT: It doesn't appear that makes any difference under the federal cases though, does it?
>
> MR. ARRABITO: I don't think so. I think they're broadly defining it as any assaultive conduct between family members would fall under the broad definition of the crime of domestic violence, yes, sir.

-11-

THE COURT: No matter how old it is even if it precedes the federal law which causes all these problems. At least the federal cases I've read indicate that previous convictions occurring prior to the enactment of the – of Clinton's '96 Act still are disqualifying.

MR. ARRABITO: I would agree with that scenario.

In light of Pfeifer's actual knowledge of §922(g)(9), it seems incongruous for him to argue that he was unfairly surprised by this application of the law. Cf. Hulstine v. Morris, 819 F.2d 861, 864 (8th Cir. 1987) ("Due process requirements may be satisfied if a defendant receives *actual notice* of the charges against him, even if the indictment or information is deficient.") (emphasis in original).

For these reasons, we conclude that § 922(g)(9) is not unconstitutionally vague as applied to Pfeifer.

IV.

Pfeifer's final argument is somewhat imprecise and makes passing reference to overreaching, the Second Amendment, the Ex Post Facto clause, principles of equal protection, and the fact that Pfeifer could not have his earlier conviction expunged under South Dakota law. We have already addressed the Ex Post Facto issue and need not revisit it here. To the extent Pfeifer is arguing that § 922(g)(9) impermissibly interferes with his Second Amendment right to bear arms, we are unpersuaded. We have held that the Second Amendment does not guarantee the right to possess a firearm unless the firearm has some reasonable relationship to the maintenance of a militia. See United States v. Miller, 307 U.S. 174, 178 (1939); United States v. Lippman, 2004 WL 1172826 at *4 (8th Cir. 2004); United States v. Hale, 978 F.2d 1016, 1020 (8th Cir. 1993). Pfeifer has made no such assertion in this case, nor would the record support one.

The remainder of this argument may constitute an equal protection challenge to Pfeifer's conviction or to the statute as a whole, but we decline to consider either issue because Pfeifer has cited no relevant authority, nor even any relevant legal principles that may support his position.  See, e.g., United States v. Richards, 118 F.3d 622, 624 (8th Cir. 1997).

## V.

In sum, we reject Pfeifer's statutory and constitutional challenges and affirm his conviction under 18 U.S.C. §922(g)(9).

_____