# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-4082

_____

Ronald Dean Swartz,

       Appellant,

v.

Ken Burger, Warden,

       Appellee.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the Northern
\* District of Iowa.
\*
\*
\*

_____

Submitted: December 14, 2004
Filed: June 28, 2005

_____

Before WOLLMAN, LAY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Ronald Dean Swartz petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his conviction for possession of a firearm as a previously convicted felon under Iowa Code §§ 724.26 and 724.4(1) violated the *Ex Post Facto* Clause of the Constitution. Art I., § 10, cl. 1. The district court[1] denied his petition, and we affirm.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

In 1976, Swartz was convicted of felony breaking and entering in Iowa state court. The following year, by legislation effective January 1, 1978, the Iowa General Assembly enacted Iowa Code § 724.26, which made unlawful the possession, receipt, or transportation of a firearm by any person who has been convicted of a felony in state or federal court.

Notwithstanding a general restoration of rights in 1981, Swartz was prohibited from possessing a firearm under § 724.26, *see* Iowa Code § 724.27, and in 1997, he was convicted of such possession. He appealed his conviction, arguing that the application of § 724.26 violated his rights under the state and federal constitutions and that the trial court had made several errors during his trial and sentencing. The Iowa Supreme Court rejected all of his arguments and affirmed his conviction. *State v. Swartz*, 601 N.W.2d 348 (Iowa 1999). Having exhausted his state court remedies, Swartz petitioned the federal district court for a writ of habeas corpus under 28 U.S.C. § 2254. Swartz again raised, *inter alia*, the argument that his conviction violated the *Ex Post Facto* Clause of the federal constitution. After a magistrate judge[2] recommended that the petition be denied, the district court accepted the report and ruled that Swartz was not entitled to relief.

A writ of habeas corpus may not be granted to a prisoner in state custody unless the adjudication of the claim by the state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. 2254(d). A state-court decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the

---

[2] The Honorable John A. Jarvey, United States Chief Magistrate Judge for the Northern District of Iowa.

-2-

Supreme Court] but reaches a different result." *Brown v. Payton*, 125 S. Ct. 1432, 1438 (2005). A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." *Id.* at 1439; *see Williams v. Taylor*, 529 U.S. 362, 405 (2000). In a case such as this one, where there are no disputed facts, we review the district court's application of these legal principles *de novo*. *Clemons v. Luebbers,* 381 F.3d 744, 749 (8th Cir. 2004).

Swartz contends that the Iowa Supreme Court's decision is "contrary to" clearly established law as determined by the Supreme Court because it is "opposite to that reached by" the Supreme Court "on a question of law." *See Williams*, 529 U.S. at 405. In particular, Swartz points to the decision in *Weaver v. Graham,* 450 U.S. 24 (1981), which held that even where a law on its face applies only after the effective date, "the critical question" under the *Ex Post Facto* Clause is "whether the law changes the legal consequences of acts completed before its effective date." 450 U.S. at 30-31. Schwartz argues that the Iowa felon-in-possession statute, enacted in 1978, constitutes increased punishment for his breaking-and-entering offense from 1976. He asserts that the Iowa Supreme Court deviated from the rule of *Weaver* by focusing only on whether the felon-in-possession statute was passed before Swartz's *possession of a firearm*, rather than on whether the new law affected the legal consequences of his underlying conviction for breaking and entering.

We are not persuaded that the Iowa Supreme Court's decision was based on application of a rule of law that contradicts *Weaver*, such that the decision was "contrary to" clearly established law. Swartz argues that the state court's reliance, "as support for [its] conclusions," on the decision in *United States v. Brady*, 26 F.3d 282 (2d Cir. 1994), demonstrates the contradiction. Swartz argues that *Brady* is "contrary to" *Weaver* (despite the Second Circuit's quotation and citation of *Weaver*, 26 F.3d at 291), because *Brady* rejected an *ex post facto* challenge to a felon-in-possession statute on the ground that the defendant possessed a firearm after the prohibition

came into effect, without examining whether the new statute increased punishment for the defendant's underlying felony.

A complete reading of the Iowa Supreme Court's decision, however, shows that the court drew its governing rule not from *Brady*, but from its prior decision in *State v. Pickens*, 558 N.W.2d 396 (Iowa 1997), and that the court rejected Swartz's claim by "applying the test articulated in *Pickens*." 601 N.W.2d at 350-51. The *Pickens* test, as quoted in *Swartz*, provides that "[t]he question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation." *Id*.

It is evident, therefore, that the Iowa Supreme Court did not apply a rule of law that merely examined whether Swartz's conduct of possessing a firearm occurred after the felon-in-possession statute was enacted. The court also considered the possibility that the new statute could be an *ex post facto* law if it was designed to punish Swartz for his 1976 breaking-and-entering conviction. The state court's analysis is thus not contrary to *Weaver*. It is also, we might add, compatible with the Supreme Court holding in *Kansas v. Hendricks*, 521 U.S. 346 (1997), that a legislature's regulatory scheme will not constitute *ex post facto* punishment if it was intended as a nonpunitive measure, unless there is the "clearest proof" that the scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Id*. at 361 (quoting *United States v. Ward*, 448 U.S. 242, 248-49 (1980) (alteration in original)). *See also Smith v. Doe*, 538 U.S. 84, 92 (2003). The Iowa Supreme Court concluded that the Iowa statute was intended as a nonpunitive regulatory measure, and there is no indication that Swartz even argued that the punitive effect of the law was so extreme as to negate the State's intention. After reviewing the full analysis of the Iowa Supreme Court, therefore, we disagree with

-4-

Swartz that the decision is "contrary to" clearly established law within the meaning of § 2254(d)(1).

We also conclude that the Iowa Supreme Court's decision did not involve an "unreasonable application" of clearly established law. As the district court noted, several federal appellate decisions are consistent with the decision of the state court. The Fourth Circuit, after thorough analysis, concluded that a North Carolina felon-in-possession statute did not violate the *Ex Post Facto* Clause as applied to offenders who committed a predicate felony prior to the date of enactment, because the state legislature acted with a non-punitive intent, and the deprivation imposed by the statute was consistent with that intent. *United States v. O'Neal*, 180 F.3d 115, 121-23 (4th Cir. 1999). *See also United States v. Huss*, 7 F.3d 1444, 1447-48 (9th Cir. 1993), *overruled on other grounds*, *United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1993) (en banc); *Cases v. United States*, 131 F.2d 916, 921 (1st Cir. 1942).

Our own court reached largely the same conclusion with respect to an application of 18 U.S.C. § 922(g)(9), which prohibits possession of a firearm by a person previously convicted of a misdemeanor crime of domestic violence. *United States v. Pfeifer*, 371 F.3d 430, 436-37 (8th Cir. 2004). Swartz observes that *Pfeifer* appears irreconcilable with our prior statement in *United States v. Davis*, 936 F.2d 352 (8th Cir. 1991), that "[i]f [a] 1975 Minnesota law limiting the right to possess a pistol were to be applied to a pre-1975 conviction, the effect would be to increase retroactively, in violation of the Ex Post Facto Clause, the punishment for the crime previously committed." *Id.* at 357. Whatever might be the ultimate conclusion of our court when faced with the conflicting precedents of *Pfeifer* and *Davis* on *de novo* review, we are confident, in light of the well-reasoned opinions finding no *ex post facto* violation under these circumstances, that the Iowa Supreme Court's decision does not involve an unreasonable application of clearly established law.

The judgment of the district court is affirmed.

_____