J-S16037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BARRY E. GROVE | |
| Appellant | No. 1135 MDA 2014 |

Appeal from the Judgment of Sentence March 12, 2014
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000873-2013

BEFORE:  PANELLA, J., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED JULY 28, 2015**

Barry E. Grove appeals the judgment of sentence entered March 12, 2014, in the Centre County Court of Common Pleas.  The trial court imposed a sentence of five to 10 years' imprisonment following Grove's non-jury conviction of one count of persons not to possess firearms, 18 Pa.C.S. § 6105.[1]  On appeal, Grove argues the trial court erred in rejecting his challenges to the conviction based upon the retroactive application of the law, as well as various violations of both the Pennsylvania and United States Constitutions.  Grove also contends the trial court erred in concluding Section 6105 is a strict liability statute, and by granting the Commonwealth's motion in *limine*, so that he was essentially precluded from

---

[1] Grove's disqualifying offense was a 1978 conviction of criminal trespass, graded as a second degree felony.

presenting an affirmative defense that he was unaware he was prohibited from possessing a firearm. Lastly, Grove claims the trial court abused its discretion in revoking his bail after his non-jury conviction, and denying both a motion for reinstatement of bail pending appeal, and a motion for bail for emergency medical treatment. Upon our thorough review of the record, the parties' briefs, and the relevant statutory and case law, we affirm Grove's judgment of sentence.

The facts underlying Grove's conviction are undisputed. On April 23, 2013, at around noon, Grove's neighbor, Sherry McCloskey, noticed Grove's car parked at the Riverfront, a local bar. Later that evening, at approximately 6:00 p.m., McCloskey was at her parents' residence located across the road from her home, when she heard a car door shut, and observed Grove's vehicle parked at the bottom of her driveway. A few seconds later, she heard one gunshot, followed by Grove's dog, Annie, crying. When McCloskey realized Grove had shot Annie in her yard, she immediately called the police. N.T., 1/24/2014, at 20, 22-23.

About 20 minutes later, before the police arrived, Grove loaded the crying dog in his vehicle and dumped the body in a field behind his home. *Id.* at 23. When a state trooper arrived to investigate, Grove told the officer he shot his dog because it had killed some of his chickens. Grove took the officer to the dog, which was still alive, and the officer "had to shoot the dog to put it out of its misery." *Id.* at 41. Another responding trooper stated, "[I]t was evident that [Grove] had been drinking" because he could

- 2 -

"definitely smell the odor of an alcoholic beverage." *Id.* at 57. Upon a check of Grove's criminal history, the troopers learned that Grove had pled guilty to one count of criminal mischief, graded as a second degree felony, on June 16, 1978.

Grove was subsequently charged with one count of persons not to possess firearms. After he waived his right to a preliminary hearing, the Commonwealth added a charge of cruelty to animals. *See* 18 Pa.C.S. § 5511(a)(2.1)(A). The trial court later severed the animal cruelty charge from the firearms charge.[2]

On December 9, 2013, Grove filed a motion in *limine* requesting the trial court preclude the Commonwealth from providing any details regarding the animal cruelty charge at his jury trial. Thereafter, on January 8, 2014, and January 15, 2014, Grove filed an original and amended motion to dismiss the charge of persons not to possess firearms based upon his 1978 guilty plea to criminal trespass. He argued, *inter alia*, that: (1) at the time of his 1978 conviction, he was not prohibited from possessing a firearm; (2) he received no notice when the law was amended in 1995; and (3) the amendment should not apply to him retroactively. The Commonwealth filed its own motion in *limine* on January 20, 2014, seeking to preclude Grove

---

[2] Grove later entered a guilty plea to one count of cruelty to animals on March 12, 2014, and was sentenced, that same day, to a term of nine months to two years' imprisonment. *See* Order, 3/12/2014.

from, *inter alia*, presenting a defense as to his ignorance of the law. On January 23, 2014, one day before Grove's scheduled jury trial, the trial court entered an order denying Grove's motions to dismiss, and granting the Commonwealth's motion in *limine*.[3]

In light of the trial court's ruling, Grove waived his right to a jury trial and proceeded to a bench trial on January 24, 2014. That same day, the trial court entered a verdict of guilty on the charge of persons not to possess firearms. After the verdict, and upon motion of the Commonwealth, the trial court revoked Grove's bail. Thereafter, Grove filed both a petition for bail pending appeal, and a motion for bail for emergency medical treatment.[4]

---

[3] Specifically, the trial court precluded Grove from presenting any evidence that: (1) he did not know his prior conviction prevented him from owning a firearm; (2) at the time of his 1978 conviction, he was not precluded from owning a firearm; (3) the Commonwealth never notified him when the law changed; (4) he had contacts with the police since the law changed and no one informed him of his ineligibility; (5) the firearms charge is a felony with the possibility of a significant prison sentence; and (6) he was originally charged with burglary in the underlying offense but the charge was dropped. **See** Order, 1/23/2014.

Grove also provided the court with seven proposed jury instructions, which reinforced his argument that he was unaware of the illegality of his actions. In an order entered January 23, 2014, the trial court declined to accept Grove's proposed instructions.

[4] Grove suffered from an inguinal hernia, that he characterized as an "acute medical condition which require[d] immediate surgery." Motion for Bail for Emergency Medical Treatment, 2/13/2014, at ¶ 11.

On February 20, 2014, the trial court imposed a sentence of five to 10 years' imprisonment for Grove's conviction under Section 6105. Additionally, at the close of the hearing, the court denied Grove's outstanding motions for bail. Thereafter, Grove filed a timely post sentence motion, raising the same claims as in his pretrial motion to dismiss and his motion in *limine*, as well as challenging the court's discretion in revoking his bail.

While that motion was pending, Grove petitioned this Court for review of the trial court's orders denying bail pending appeal and for emergency medical treatment. On March 5, 2014, this Court directed the trial court to state on the record its reasons for denying bail. *See* Order, 3/5/2014. The trial court complied with this Court's directive and, on March 21, 2014, this Court entered an order denying review of the trial court's decision to deny bail pending appeal. However, as to the trial court's denial of bail for emergency medical treatment, this Court directed the trial court to either grant bail for medical treatment or state its reasons for denying bail on the record. *See* Order, 3/21/2014. On March 25, 2014, the trial court responded to this Court's directive and stated that Grove's petition for bail for emergency medical treatment was "moot" because he entered a guilty plea to the charge of cruelty to animals and would soon be transported to "SCI Camp Hill for diagnostic classification." Response to Superior Court's Directive, 3/25/2014. On April 2, 2014, this Court entered another order, directing the trial court, within 48 hours, to explain how Grove's petition

could be moot when the trial court could not "confirm [Grove's] whereabouts, definite plans for his transfer to SCI-Camp Hill, or any immediate plans to address his emergency medical issues." Order, 4/2/2014.

Once again, the trial court filed a timely response to this Court's directive. On April 3, 2014, the trial court noted: (1) Grove was scheduled to be transported to SCI-Camp Hill on April 10, 2014; (2) it placed reasons on the record for its denial of Grove's bail requests during the February 20, 2014, sentencing hearing; and (3) upon Grove's examination by medical professionals at the Centre County Correctional Facility, "it was determined that because the hernia is not incarcerated and is reducible, it is [an] elective procedure." Response to Superior Court's Order, 4/3/2014. Thereafter, on April 10, 2014, this Court entered an order directing the trial court to conduct a hearing within 10 days, and issue findings of fact with respect to the medical necessity of Grove's application for bail.[5] *See* Order, 4/10/2014. The trial court conducted a hearing, and subsequently entered an order, on April 17, 2014, denying Grove's petition for bail. The court explained Grove would be "furloughed on April 29, 2014, to the Gray's Woods Surgical Center for purposes of injuinal hernia repair[,]" and the

_____

[5] This Court recognized that many of the documents submitted by Grove in support of his application in the Superior Court were not part of the certified record before the trial court.

Centre County Correctional Facility would perform all of Grove's preoperative tests. Order, 4//17/2014.

Thereafter, on June 12 and 16, 2014, the trial court conducted hearings on Grove's post-sentence motions.[6] On June 16, 2014, the trial court entered an order denying Grove's post-sentence motions. This timely appeal follows.[7]

The bulk of Grove's claims on appeal emphasize the inherent unfairness and purported unconstitutionality of Grove's prosecution of persons not to possess firearms based upon a disabling conviction that occurred prior to the enactment of the current version of the statute. Accordingly, the following background is necessary to our discussion.

On June 16, 1978, Grove entered a guilty plea to one count of criminal trespass, graded as a felony of the second degree.[8] Although he was

_____

[6] During the June 12, 2014, hearing, Grove testified that sometime during March or April of 2012, his prison physician discovered that Grove also suffered from stage four prostate cancer. *See* N.T., 6/12/2014, at 5. At the June 14, 2012, hearing, Dr. Theodoor Voorstad, from the Camp Hill correctional facility, testified Grove was scheduled to meet with an oncologist the following day. *See* N.T., 6/14/2014, at 4.

[7] On July 15, 2014, the trial court ordered Grove to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Grove complied with the court's directive and filed a concise statement on July 28, 2014.

[8] *See* 18 Pa.C.S. § 3503(a)(1)(ii), (2) (grading criminal trespass as a second degree felony when "[a] person … knowing that he is not licensed or privileged to do so, … breaks into any building or occupied structure or separately secured or occupied portion thereof.").

originally also charged with burglary and attempted theft, the Commonwealth *nol prossed* those charges, noting there was "[i]nsufficient evidence of requisite intent." Motion to Dismiss, 1/8/2014, Exhibit A. At the time of Grove's plea, Section 6105 provided, "No person who has been convicted in this Commonwealth or elsewhere of a **crime of violence** shall own a firearm, or have one in his possession or under his control." 18 Pa.C.S. § 6105 (1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973) (emphasis supplied). Further, Section 6102 of the Crimes Code defined "crime of violence" as:

> Any of the following crimes, or an attempt to commit any of the same, namely: murder, rape, aggravated assault, robbery, burglary, entering a building with intent to commit a crime therein[.]

18 Pa.C.S. § 6102 (1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973). Therefore, under the clear terms of the Crimes Code, at the time of Grove's criminal mischief conviction, Grove was not precluded from owning or possessing a firearm.

However, in 1995, the Pennsylvania Legislature amended Section 6105 to read, substantially, as it does today. Now, Section 6105 precludes persons convicted of certain enumerated felonies, not all involving crimes of violence, from possessing or using a firearm. The statute provides, in relevant part, as follows:

**(a) Offense defined.**--

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

\* \* \* \*

**(b) Enumerated offenses.**--The following offenses shall apply to subsection (a): ...

Section 3503 (relating to criminal trespass) if the offense is graded a felony of the second degree or higher.

18 Pa.C.S. § 6105(a)(1), (b).  Accordingly, as of the effective date of the amendment, Grove was prohibited from owning or possessing a firearm based upon his 1978 conviction of criminal trespass.[9]

---

[9] We note the statute does provide a person convicted of a disabling crime "a reasonable period of time, not to exceed 60 days from the date of the imposition of the disability …, in which to sell or transfer that person's firearms to another eligible person who is not a member of the prohibited person's household."  18 Pa.C.S. § 6105(a)(2)(i).  This Court has interpreted subsection (a)(2)(i) to be an affirmative defense, placing the burden upon the defendant to prove he never had a reasonable opportunity to dispose of his firearms.  *See Commonwealth v. Alvarez-Herrera*, 35 A.3d 1216, 1219 (Pa. Super. 2011) (holding Commonwealth did not have the burden to prove that defendant had a reasonable opportunity to dispose of firearms after it was established he was an illegal alien, and defendant presented no evidence to support affirmative defense).  Moreover, the 60-day period begins to run on the date the defendant is convicted of the disabling offense. *Commonwealth v. Appleby*, 856 A.2d 191, 194 (Pa. Super. 2004) ("Under [S]ection 6501, **conviction** of an enumerated offense (including aggravated assault) imposes upon a defendant the disability to possess, use, control, sell, transfer or manufacture a firearm-not a guilty plea, not sentencing, not release from prison, but conviction.") (emphasis in original).

In his first issue, Grove contends that his prosecution constituted an improper retroactive application of the law. As this issue involves a pure question of law, our standard of review is *de novo*. **Commonwealth v. Clegg**, 27 A.3d 1266, 1269 (Pa. 2011).

The Statutory Construction Act plainly states "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. § 1926. However,

> "…a law is only retroactive in its application when it relates back and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired."

> Where ... no vested right or contractual obligation is involved, an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events prior to that date ... '[A] statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon antecedent facts for its operation.'

> A "vested right" is one that "so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent."

**In re R.T.**, 778 A.2d 670, 679 (Pa. Super. 2001) (citations omitted), *appeal denied*, 792 A.2d 1254 (Pa. 2001).

Furthermore, while an individual has a constitutional right to own or possess a firearm,

> like many other constitutional rights, it is not beyond regulation. **See Lewis** [**v. United States**, 445 U.S. 55, 65 n.8, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980)] ("These legislative restrictions [preventing convicted felons from possessing firearms] are neither based on constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties."); **see also Gardner v. Jenkins**, 116 Pa.Cmwlth. 107, 541 A.2d 406, 409

- 10 -

(1988) ("The right to bear arms, although a constitutional right, is not unlimited and may be restricted in the exercise of the police power for the good order of society and protection of the citizens.").

***Lehman v. Pennsylvania State Police***, 839 A.2d 265, 273 (Pa. 2003).

Here, Grove argues that when he was convicted of criminal trespass, he was not prohibited from possessing a firearm, and it was only after the Legislature amended the statute in 1995, that his prior conviction imposed a disability. Furthermore, he asserts he was not advised that the law had changed, or that his continued possession of a firearm was no longer permissible. Therefore, he contends the trial court improperly applied the statute retroactively to punish him for his past conviction.

The Commonwealth asserts, however, that the statute was not applied retroactively. Grove was convicted based upon his possession of a firearm on **April 23, 2013**, not as an additional punishment for his prior conviction of criminal trespass. We agree.

As noted *supra*, "an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events prior to that date." **R.T.**, ***supra***, 778 A.2d at 679 (citation omitted). In the present case, although Grove was convicted of criminal trespass 17 years before the statute was amended, he committed the crime of persons not to possess firearms on April 23, 2013, when he possessed a firearm despite his status as a disqualified felon. Indeed, Grove's prior

- 11 -

conviction was simply a condition precedent to the present conviction. Accordingly, his first issue fails.[10]

In a related claim, Grove also contends his present prosecution constitutes an *ex post facto* application of the law.

Both the federal and state constitutions prohibit the enactment of *ex post facto* laws. **See** U.S. Const. Art. I, § 8; Pa. Const. Art. I, § 17. Generally, a statute, or application thereof, will be considered invalid as an *ex post facto* law if one of the following four factors is present:

> (1) The law makes an act criminal which was not criminal when done; (2) The law aggravates a crime, or makes it greater than it was when committed; (3) The law changes a punishment, and makes it greater than it was when the punishable act was committed; and (4) The law alters the rules of evidence and requires less or different testimony than the law required at the time the offense was committed, in order to convict.

**Commonwealth v. Riley**, 384 A.2d 1333, 1335 (Pa. Super. 1978) (*en banc*) (citations omitted). **See also Calder v. Bull**, 3 U.S. 386, 390 (1798). "[T]he standards applied to determine an *ex post facto* violation under the Pennsylvania Constitution and the United States Constitution are comparable." **Commonwealth v. Perez**, 97 A.3d 747, 759 (Pa. Super. 2014) (citation omitted).[11]

---

[10] As we will discuss *infra*, the Commonwealth was not required to notify Grove that the statute was amended to include his criminal trespass conviction as a disabling offense.

[11] We note that Grove has failed to include in his brief an analysis of the factors set forth in **Commonwealth v. Edmunds**, 586 A.2d 887, 895 (Pa. *(Footnote Continued Next Page)*

In the present case, Grove argues "the Commonwealth's application of [Section 6105's 1995 amendment] is unconstitutional as applied to him for his 1978 guilty plea to criminal trespass and constituted an illegal and impermissible *ex post facto* application of the current version of Section 6105." Grove's Brief at 27-28. Relying on **Weaver v. Graham**, 450 U.S. 24 (1981), Grove asserts a statute "violates the *ex post facto* clause if it is both retrospective and more onerous than the law in effect on the date of the offense." **Id.** at 33.

In **Weaver**, the United States Supreme Court considered whether "a Florida statute altering the availability of [] 'gain time for good conduct' [was] unconstitutional as an *ex post facto* law when applied to petitioner, whose crime was committed before the statute's enactment." **Weaver**, **supra**, 450 U.S. at 25 (footnote omitted). In that case, the defendant was sentenced to a 15-year prison term in May of 1976. Two years later, in 1978, the Florida Legislature enacted a statute which provided a new formula for an incarcerated defendant's gain-time deductions. By its terms, the new statute applied "not only to prisoners sentenced for crimes committed since its enactment in 1978, but also to all other prisoners,

*(Footnote Continued)* ─────────────

1991), in order to demonstrate that the Pennsylvania Constitution affords greater protection against the enactment of *ex post facto* laws than the United States Constitution. Accordingly, any claim to the contrary fails. **Perez**, **supra**, 97 A.3d at 760.

- 13 -

including petitioner, whose offenses took place before that date." *Id.* at 27 (footnote omitted).

In considering whether the statute violated the *ex post facto* clause, the Supreme Court explained that "two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29. While recognizing the law at issue was not retrospective on its face because it applied only after its effective date, the Court explained that "[t]he critical question is whether the law changes the legal consequences of acts completed before its effective date." *Id.* at 31. Because the Florida penal statute at issue "substantially alter[ed] the consequences attached to a crime already completed, and therefore change[d] the 'quantum of punishment[,]'" the Supreme Court held it was retrospective. *Id.* Furthermore, because "the new provision constrict[ed] the inmate's opportunity to earn early release," and the Court also concluded the statute made "more onerous the punishment for crimes committed before its enactment" and, therefore, "[ran] afoul of the prohibition against *ex post facto* laws." *Id.* at 36.

We find Grove's reliance on *Weaver* misplaced. As explained in our prior discussion of Grove's retroactivity claim, the 1995 amendment to Section 6105 did not criminalize behavior that occurred before its passage; rather, the statute criminalized Grove's **subsequent** possession of a firearm in April of 2013, 18 years after the amendment was enacted. Moreover,

contrary to Grove's contention, we do not find that Grove's prosecution imposed an additional punishment for his prior crime. Again, Grove was prosecuted based upon his 2013 possession of a firearm, not based upon his 1978 conviction of criminal trespass.

The federal circuit courts have considered, and rejected, analagous *ex post facto* claims with regard to prosecutions under amendments to the Gun Control Act ("GCA") of 1968, 18 U.S.C. §§ 921-931. Similar to Section 6105, the GCA, *inter alia*, prohibits certain persons, including those convicted of a crime punishable by imprisonment for a term exceeding one year and those convicted of a misdemeanor crime of domestic violence, from possessing a firearm. **See** 18 U.S.C. § 922(g)(1), (9). In **U.S. v. Brady**, 26 F.3d 282 (2d Cir. 1994), *cert. denied*, 513 U.S. 894 (1994), the Second Circuit Court of Appeals rejected a defendant's claim that his conviction for possessing a firearm in June of 1992 violated the *ex post facto* clause because his predicate offense was a 1951 conviction. The Court held:

> [The defendant] violated section 922(g) long after it became the law. Section 922(g) became effective in 1986. [The defendant's] possession of a gun from which the current conviction arises occurred on June 10, 1992. Regardless of the date of [his] prior conviction, the crime of being a felon in possession of a firearm was not committed until after the effective date of the statute under which he was convicted. By 1992 [the defendant] had more than adequate notice that it was illegal for him to possess a firearm because of his status as a convicted felon, and he could have conformed his conduct to the requirements of the law. Therefore, the Ex Post Facto clause was not violated by the use of a 1951 felony conviction as a predicate for a violation of § 922(g).

*Id.* at 291 (footnoted omitted).

The Fourth Circuit Court of Appeals reached the same conclusion in *U.S. v. Mitchell*, 209 F.3d 319 (4th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000).  In that case, the defendant was convicted in June of 1996 of a misdemeanor assault charge for an incident of domestic violence.  He had purchased a handgun four months earlier.  In September of 1996, Congress amended the GCA to make it illegal for persons convicted of misdemeanor domestic violence crimes to possess a firearm.  *See* 18 U.S.C. § 922(g)(9).  Thereafter, in July of 1998, while the police were investigating another incident of domestic violence, they searched Mitchell's home and found the firearm he had owned for two years.  He was subsequently charged with a violation of Subsection (g)(9). *See Mitchell*, *supra*, 209 F.3d at 321.

On appeal, Mitchell argued, *inter alia*, that his prosecution under Section 922(g) violated the *ex post facto* clause because "both his firearm purchase and misdemeanor domestic violence conviction occurred prior to § 922(g)(9)'s enactment." *Id.* at 322.  In rejecting this claim, the Fourth Circuit opined:

> It is immaterial that Mitchell's firearm purchase and domestic violence conviction occurred prior to § 922(g)(9)'s enactment because the conduct prohibited by § 922(g)(9) is the possession of a firearm. *See, e.g., United States v. Boyd*, 52 F.Supp.2d 1233, 1236-37 (D.Kan.1999) ("This court, as have all others deciding such a challenge, have concluded that ... the illegal act in § 922(g)(9) is the possession of the firearm, not the misdemeanor domestic violence conviction...."); *National Ass'n of Gov't Employees v. Barrett*, 968 F.Supp. 1564, 1575-76 (N.D.Ga.1997), *aff'd sub nom. Hiley v. Barrett*, 155 F.3d 1276

(11th Cir.1998). As it is undisputed that Mitchell possessed the firearm after the enactment of § 922(g)(9), the law's application to Mitchell does not run afoul of the ex post facto prohibition.

Courts addressing similar ex post facto challenges to § 922(g)(9) have all agreed with this conclusion. *See, e.g., Boyd*, 52 F.Supp.2d at 1236-37; *McHugh v. Rubin*, 49 F.Supp.2d 105, 108 (E.D.N.Y.1999); *United States v. Hicks*, 992 F.Supp. 1244, 1245-46 (D.Kan.1997); *United States v. Meade*, 986 F.Supp. 66, 69 (D.Mass.1997), *aff'd*, 175 F.3d 215 (1st Cir.1999); *Barrett*, 968 F.Supp. at 1575-76. Analogous ex post facto challenges to other similarly worded firearm possession crimes have also failed. *See, e.g., United States v. D'Angelo*, 819 F.2d 1062, 1065-66 (11th Cir.1987) (Defendant "was in possession of the pistol after the enactment of the statute. Proof of [defendant's] possession obviated the need for proof of the date [defendant] received the pistol."); *United States v. Brady*, 26 F.3d 282, 290-91 (2d Cir.1994); *United States v. Gillies*, 851 F.2d 492, 495 (1st Cir.1988).

*Id.* at 322-323. *See also United States v. Pfeifer*, 371 F.3d 430, 436 (8th Cir. 2004) (rejecting *ex post facto* challenge to conviction under Section 922(g)(9), stating "[t]he critical factor in these decisions is that the prohibited conduct-possession of a firearm-occurred after enactment of the statute.").

We acknowledge that the holdings of our federal circuit courts are not binding authority on this Court. *Commonwealth v. Orie*, 88 A.3d 983, 1013 n.49 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). Nevertheless, it is well-established that those decisions "may serve as persuasive authority in resolving analogous cases." *Commonwealth v. Haskins*, 60 A.3d 538, 548 n.9 (Pa. Super. 2012) (citation omitted), *appeal denied*, 78 A.3d 1090 (Pa. 2013). Because the relevant provisions of the GCA and Section 6105 are sufficiently similar for

purposes of an *ex post facto* challenge, and we agree with the analysis of the Second and Fourth Circuit Court of Appeals, we find Grove's *ex post facto* argument fails.

Next, Grove raises three additional constitutional challenges to the statute. He asserts (1) the punishment attached to his crime is so punitive that it constitutes cruel and unusual punishment;[12] (2) his prosecution for violating Section 6105 contravenes due process because he was not notified of the 1995 amendment to the law;[13] and (3) the retroactive application of Section 6105 stripped him of his constitutional right to bear arms.[14] **See** Grove's Brief at 29-31. We will address these claims seriatim.

Both the United States and Pennsylvania Constitutions prohibit the imposition of cruel and unusual punishment. **See** U.S. Const. Amend. VIII; Pa. Const. Art. I, § 13. It is well-settled that "these constitutional provisions are coterminous, [and] we need only engage in an Eighth Amendment review." **Commonwealth v. Thompson**, 106 A.3d 742, 763 (Pa. Super. 2014).

Preliminarily, we note "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme

---

[12] U.S. Const. Amend. VIII; Pa. Const. Art. I, § 13.

[13] U.S. Const. Amend. V; Pa. Const. Art. I, § 9.

[14] U.S. Const. Amend. II; Pa. Const. Art. I, § 21.

sentences which are grossly disproportionate to the crime." **Commonwealth v. Elia**, 83 A.3d 254, 268 (Pa. Super. 2013) (citations omitted), *appeal denied*, 94 A.3d 1007 (Pa. 2014). When considering a statute's constitutionality under the Eighth Amendment, this Court adopted a three-part proportionality test set forth in **Commonwealth v. Spells**, 612 A.2d 458 (Pa. Super. 1992) (*en banc*), *appeal dismissed as improvidently granted*, 643 A.2d 1078 (Pa. 1994),:

> Specifically, we concluded the following criteria should govern such an analysis: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." **Id.** at 462, *quoting* **Solem v. Helm**, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); **accord** [**Commonwealth v.**] **Baker**, [78 A.3d 1044,] 1047 [(Pa. 2013)]. Although no single factor is dispositive, the court's findings relative to the first factor may determine whether a particular sentence is constitutional. **Spells, supra** at 463; **accord Harmelin v. Michigan**, 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); **Solem, supra** at 291 n. 17, 103 S.Ct. 3001; **Baker, supra**. Therefore, courts should initially consider if "a sentence is grossly disproportionate to a crime." **Spells, supra** at 463, *quoting* **Harmelin, supra**; **accord Baker, supra** at 1048. In other words, "[we] must examine whether the punishment fits the crime." [**Commonwealth v.**] **Parker**, [718 A.2d 1266,] 1269 [(Pa. Super. 1998)]. If the court concludes no such gross disproportionality exists, the sentence does not violate the Eighth Amendment. **See Baker**, **supra** at 1052; **Spells**, **supra** at 463–464.

**Thompson**, **supra**, 106 A.3d at 764.

Here, Grove asserts that "under the specific circumstances which exist in [his] case," his prosecution for a violation of Section 6105 constituted cruel and unusual punishment. Grove's Brief at 31. Specifically, he

- 19 -

reiterates his argument that he was not prohibited from owning or possessing firearms at the time of his guilty plea in 1978, and he did not know of the change in the law that "would expose him to criminal prosecution and imprisonment for a number of years." *Id.*

However, Grove's argument does not address the three-part analysis set forth in *Spells*. Rather, Grove focuses on the purported inherent unfairness of punishing him for an act which he contends he did not know was illegal. Unfortunately, for Grove, it is a well-established legal maxim that ignorance of the law is not a defense. *Commonwealth v. Henderson*, 938 A.2d 1063, 1067 (Pa. Super. 2007), *appeal denied*, 954 A.2d 575 (Pa. 2008). *But see Commonwealth v. Kratsas*, 764 A.2d 20, 31 (Pa. 2001) (holding due process reliance defense may serve "as an exception to the maxim that mistake of law is no defense"); *Commonwealth v. Mohamud*, 15 A.3d 80, 85 (Pa. Super. 2010) (noting, "the general rule that citizens are presumed to know requirements of the law ... is not absolute, and may be abrogated when a law is so technical or obscure that it threatens to ensnare individuals engaged in apparently innocent conduct.") (citation omitted). Because Grove cannot demonstrate that a five-year sentence for possession of a firearm by a person statutorily prohibited from doing so is "grossly disproportionate to the crime," his Eighth Amendment challenge fails. *Thompson*, *supra*.

Grove also contends his prosecution violated his constitutional right to due process of law pursuant to the Fifth Amendment of the United States Constitution, and Article I, Section 9 of the Pennsylvania Constitution.

When considering a due process claim, we first note:

> A "due process inquiry, in its most general form, entails an assessment as to whether the challenged proceeding or conduct 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental' and that 'define[s] the community's sense of fair play and decency.'" ***Commonwealth v. Kratsas***, 564 Pa. 36, 764 A.2d 20, 27 (2001) (citation omitted). While not capable of an exact definition, basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. ***Commonwealth v. Thompson***, 444 Pa. 312, 281 A.2d 856, 858 (1971).

***Commonwealth v. Wright***, 961 A.2d 119, 132 (Pa. 2008). Moreover, similar to his prior claim, "the due process provision of the Pennsylvania Constitution does not provide greater protections than its federal counterpart." ***Commonwealth v. Louden***, 803 A.2d 1181, 1184 (Pa. 2002).

Grove's due process argument again focuses on his lack of knowledge that his 1978 conviction prohibited him from owning or possessing a firearm. He asserts:

> The Commonwealth failed to provide any notice or warning whatsoever to [Grove] that his theretofore legally acceptable behavior between 1978 and 1995 had suddenly become illegal in 1995 with the passage of the new legislation and criminalized his behavior for possessing or using firearms without his knowledge thus exposing him to prosecution and a significant prison

sentence of five (5) to ten (10) years without providing any notice to him formally or informally.

Grove's Brief at 29.

Although Grove scatters due process concerns throughout his brief, he does not cite any case law or provide any further analysis with respect to this particular claim.[15]  For that reason, we find his argument waived.  **See Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 781 (Pa. Super. 2015) ("Because Appellant has failed to develop his argument or cite authority, he is not entitled to relief on his first claim.").

Nevertheless, we note that the Sixth Circuit Court of Appeals in **United States v. Young**, 766 F.3d 621 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1475 (U.S. 2015), rejected a similar due process challenge to the federal GCA.

In **Young**, the defendant argued that he lacked notice of the GCA's prohibition against the possession of ammunition by felons.  The Sixth Circuit Court of Appeals held that while "[i]t would be preferable for both state and federal courts to expressly inform felons of their legal disability … [t]he Fifth Amendment notice requirement is satisfied by the statute." **Young**, *supra*, 766 F.3d at 630.

---

[15] Grove also raises a due process challenge in conjunction with his argument that Section 6105 does not impose strict liability.  We will address that claim *infra*.

We find the same reasoning applies here. *See Haskins*, *supra*. Grove knew he had been convicted of a felony, and knowingly possessed a firearm. Although his particular conviction did not prevent him from owning or possessing a firearm in 1978, the law had changed 18 years prior to his arrest in 2013. As we noted previously, ignorance of the law is not a defense. *Henderson*, *supra*. Accordingly, Grove's due process claim fails.

In his last constitutional challenge to Section 6105, Grove contends the "retroactive application of [the 1995 Amendment to Section 6105] … stripped [him] of his fundamental constitutional right to bear arms[.]" Grove's Brief at 29. Other than stating the law "stripped" him of his constitutional rights, Grove cites no case law or provides any further argument in support of his claim. Therefore, it is waived. *See Reyes-Rodriguez*, *supra*.

Furthermore, it is well-settled that the government may prohibit certain individuals, such as convicted felons and the mentally ill, from possessing firearms, or preclude the carrying of firearms in specified places, such as schools or government buildings, without violating Second Amendment protections. *See D.C. v. Heller*, 554 U.S. 570, 626-627 (2008); *Lehman*, *supra*, 839 A.2d at 273. Therefore, Grove's constitutional challenges to his prosecution merit no relief.

In his next claim, Grove argues the trial court erred in concluding that Section 6105 was "essentially" a strict liability crime when the court determined the Commonwealth was **not required** to prove Grove knew his

possession of a firearm was prohibited.[16]  Grove's Brief at 34.  He asserts

that strict liability offenses are disfavored, and generally, a statute "will not

be considered to impose absolute liability absent some indication of a

legislative directive to dispense with *mens rea*."  **Id.** at 35.   To that end,

Grove contends the more serious the penalty for the crime, the more likely

the legislature intended to impose some culpability standard.  Indeed, Grove

states that when, as here, a statute is silent as to *mens rea*, the default

culpability requirements set forth in 18 Pa.C.S. § 302(c) should apply:

> **(c) Culpability required unless otherwise provided.--**When
> the culpability sufficient to establish a material element of an
> offense is not prescribed by law, such element is established if a
> person acts intentionally, knowingly or recklessly with respect
> thereto.

18 Pa.C.S. § 302(c).

Citing a number of cases in which courts of this Commonwealth have

imputed Section 302(c) culpability standards, Grove argues the trial court

erred in the present case when it concluded the Commonwealth was not

required to prove that Grove possessed a firearm with some knowledge that

he was prohibited from doing so.  Further, absent proof of this knowledge,

he asserts his prosecution violated his constitutional right to due process.

---

[16] "Whether a given statute is to be construed as requiring criminal intent is to be determined by the court, by considering the subject matter of the prohibition as well as the language of the statute, and thus ascertaining the intention of the legislature."  **Commonwealth v. Mayfield**, 832 A.2d 418, 427 (Pa. 2003) (citation omtted).

In its opinion, however, the trial court clarified that it did not find Section 6105 was a strict liability statute. Rather, it "decline[d] to impose a notification requirement on the Commonwealth where the legislature ha[d] not included one." Trial Court Opinion, 9/26/2014, at 4. As the court succinctly stated, "Notice to a defendant charged under Section 6105 is not an element the Commonwealth must prove." *Id.* We agree.

Grove correctly asserts that Section 6105 does **not** contain a specific *mens rea* requirement, and there is no indication the legislature intended to impose strict liability for the crime. Accordingly, applying Section 302(c) to the terms of the statute, we find that, in order to secure a conviction under Section 6105, the Commonwealth must prove (1) the defendant had been previously convicted of a disabling offense enumerated in Subsection § 6105(b), and (2) the defendant "intentionally, knowingly, or recklessly" possessed or used a firearm. **See** 18 Pa.C.S. § 6105(a)(1), (b). **See Commonwealth v. Moore**, 49 A.3d 896, 903 (Pa. Super. 2012) (holding for purposes of a conviction under Section 6105 "mere possession, along with the prior conviction, does establish the element of the crime" and Commonwealth need not prove the defendant "possessed the gun **unlawfully**.") (emphasis supplied), *vacated on other grounds*, 102 A.3d 1240 (Pa. 2014).

Although Grove cites a number of cases in which both this Court and the Pennsylvania Supreme Court have imputed a *mens rea* to a statute that did not specifically include one, in each of those cases, the appellate court

found the "catch-all" *mens rea* in Section 302 was applicable to **an element of the crime**. *See Commonwealth v. Gallagher*, 924 A.2d 636 (Pa. 2007) (holding Commonwealth must prove defendant acted intentionally, knowingly, or recklessly **with respect to the victim's age** to secure a conviction for luring a "child" into a car pursuant to 18 Pa.C.S. § 2910); *Mayfield*, *supra*, 832 A.2d at 427 (imputing Section 302 culpability to the crime of institutional sexual assault; "to be convicted under [18 Pa. C.S.] § 3124.2, a corrections officer would have to be at least reckless as to the **status of their sexual partner as an 'inmate,** detainee, patient or resident.'") (emphasis supplied); *Commonwealth v. Pond*, 846 A.2d 699, 706 (Pa. Super. 2004) (imputing Section 302 culpability to sexual offender registration requirements; "the Commonwealth must establish that the accused's **failure to properly verify his address** was intentional, knowing or reckless[.]") (emphasis supplied); *Commonwealth v. Woosnam*, 819 A.2d 1198, 1206 (Pa. Super. 2003) (holding trial court erred in failing to instruct the jury that they must find defendant, charged with leaving the scene of an accident involving death or personal injury, was at least negligent "**with respect to her knowledge that she was involved in an accident involving death or injury**.") (emphasis supplied). *See also Staples v. U.S.*, 511 U.S. 600, 619 (1994) (holding that "to obtain a conviction [under the National Firearms Act for unlawful possession of an unregistered machine gun], the Government should have been required to

prove that petitioner **knew of the features of his AR–15** that brought it within the scope of the Act.") (emphasis supplied).

Conversely, here, Grove seeks to impute a *mens rea* requirement to his knowledge, or lack thereof, **of the crime itself**. Indeed, he contends the Commonwealth should have been required to prove that he **knew** his conviction of felony criminal trespass precluded him from owning or possessing a firearm, or, in other words, **he knew he was violating a law**. The decisions cited above, however, do not support this proposition. Rather, the cases upon which Grove relies impute a *mens rea* requirement to an element of the crime, not to the defendant's knowledge that the crime existed.[17]

---

[17] "It is well established that a bona fide, reasonable mistake of fact may, under certain circumstances, negate the element of criminal intent." ***Commonwealth v. Namack***, 663 A.2d 191, 194 (Pa. Super. 1995). Section 304 of the Crimes Code provides:

> Ignorance or mistake as to a **matter of fact**, for which there is reasonable explanation or excuse, is a defense if:
>
> > (1) the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required to establish a **material element of the offense**; or
> >
> > (2) the law provides that the state of mind established by such ignorance or mistake constitutes a defense.

18 Pa.C.S. § 304 (emphasis supplied). Again, here, Grove seeks to present a defense that he was mistaken as to the law.

For example, in **Gallagher**, **supra**, the Supreme Court held that, to secure a conviction for luring a child into a car,[18] the Commonwealth must prove Gallagher knew or was reckless regarding the age of the "child" he lured into a car. The Court **did not require** the Commonwealth to prove Gallagher knew it was a crime to lure a child into a car. Indeed, it is axiomatic that ignorance of the law is no defense.

> The familiar maxim "ignorance of the law is no excuse" typically holds true. Instead, our cases have explained that a defendant generally must "know the facts that make his conduct fit the definition of the offense," **Staples v. United States**, 511 U.S. 600, 608, n. 3, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), **even if he does not know that those facts give rise to a crime**.

**Elonis v. United States**, 135 S. Ct. 2001, 2009 (U.S. 2015) (emphasis supplied).

Herein lies the inherent problem with Grove's argument. Grove seeks to ignore this well-established legal maxim, so that he can demonstrate he did not know he was statutorily prohibited from owning a firearm. While we recognize the allure of this argument, particularly since it was Grove's only reasonable defense to the crime, unfortunately his line of reasoning does not conform with the law. The Court of Appeals has explained:

> . . . [I]f such ignorance [of the law] were available as a defense in every criminal case, this would be a constant source of confusion to juries, and it would tend to encourage ignorance at a point where it is peculiarly important to the state that

---

[18] **See** 18 Pa.C.S. § 2910.

> knowledge should be as widespread as is reasonably possible. In the language of one of the giants of the profession, this is a point at which justice to the individual is rightly outweighed by the larger interests on the other side of the scales.

*United States v. Weiler*, 458 F.2d 474, 479-480 (3d Cir. 1972) (footnote omitted), *citing* Holmes, The Common Law (1881) 48. *See Young*, *supra*, 766 F.3d at 629-630 (rejecting argument that GCA is a strict liability statute because it does not require defendant know his possession of a firearm is illegal; "unless the statute is so vague, technical, or obscure that it threatens to ensnare individuals engaged in apparently innocent conduct, we apply the centuries-old maxim that ignorance of the law is no excuse and presume notice despite a defendant's ignorance-in-fact.") (internal punctuation and citation omitted).

Grove further argues, however, that in certain unique circumstances, the due process clause of the federal and state constitutions may "provide an exception to the maxim that a mistake of law is no defense and may ultimately foreclose a criminal prosecution prior to trial." Grove's Brief at 43. In support of this claim, he cites our supreme court's decision in *Kratsas*, *supra*.

In *Kratsas*, the defendants were proprietors of a business that leased game and vending machines, including video poker and slot machines. After an investigation by the Pennsylvania Bureau of Liquor Control Enforcement revealed that some of the devices they leased were prohibited "gambling devices," the defendants were charged with various criminal offenses, including corrupt organizations. *Kratsas*, *supra*, 764 A.2d at 23. Prior to

trial, the defendants sought dismissal of the charges as violative of their due process rights because, they alleged, gambling is *de facto* legal in Pennsylvania, and local officials and law enforcement routinely issue device licenses with the knowledge that the devices are used for gambling purposes. The trial court accepted the defendants' claims, and dismissed the charges due to the defendants' "reliance on misrepresentations of law by government officials." ***Id.*** at 24. The court found that to allow the prosecutions to go forward in light of the actions of the relevant governmental officials would be violative of the defendants' due process rights. ***Id.*** at 25. This Court subsequently affirmed the trial court's decision.

On appeal, our supreme court recognized that the so-called "reliance doctrine" provided "a narrow exception to the maxim that ignorance of the law is no excuse," and might foreclose a criminal prosecution when (1) there is an "affirmative representation that certain conduct is legal[;]" (2) "the representation [is] made by an official or body charged by law with responsibility for defining permissible conduct respecting the offense at issue[;]" (3) the defendant actually relied on the statement of the official, and (4) the reliance was reasonable and in good faith. ***Id.*** at 29, 32-33. The Supreme Court held that in such "a narrow set of unique and compelling

circumstances," due process concerns might preclude a criminal prosecution.[19] **Id.** at 31.

Grove's attempt to apply the due process concerns in **Kratsas** to the facts in the present case fails. Specifically, Grove does not argue the reliance doctrine applies herein. Indeed, he does not contend that a governmental official **affirmatively** told him that he was permitted to own and possess firearms.[20] The due process concerns in **Kratsas** were narrowly tailored to the facts of that case, and the corresponding invocation of the reliance doctrine as a defense. Accordingly, **Kratsas** offers Grove no relief here, and his challenge regarding the purported lack of *mens rea* in the statute merits no relief.[21]

In his next two arguments, Grove asserts the trial court erred in granting the Commonwealth's pretrial motion in *limine* and denying his request for certain jury questions, which effectively precluded him from

---

[19] The **Kratsas** Court ultimately held, however, the defendants in that case failed to establish a due process claim based upon the reliance doctrine. **Kratsas**, **supra**, 764 A.2d at 39.

[20] We note that there is nothing in the record to suggest that Grove applied for a license to carry a firearm after 1995, and was granted a license in contravention of the statute. Rather, Grove claims that governmental officials **never** told him he was prohibited from possessing a firearm.

[21] We also reject Grove's assertion that the due process clause in the Pennsylvania Constitution offers more protection than the due process clause in the United States Constitution. **See** Grove's Brief at 44. Grove neglects to include a detailed **Edmunds** analysis, and, accordingly, his claim fails. **See Edmunds**, **supra**, 586 A.2d at 895.

presenting a defense that he was unaware he was violating Section 6105. Grove includes very little argument in his brief on these claims, but rather, continues to insist that he was unaware the law had changed in 1995, and, had he known he was prohibited from owning or possessing firearms, he would have applied for an exemption.[22]   *See* 18 Pa.C.S. § 6105(d)(iii) (permitting prior felon to apply to court of common pleas for exemption when, *inter alia*, the prior conviction was more than 10 years old).

Both the Commonwealth's motion in *limine*, and Grove's requested jury instructions, relate to his claim that he was unaware he was prohibited from owning or possessing a firearm.  As discussed in detail above, Grove's ignorance of the law is not a defense to the charge of persons not to possess firearms.  Accordingly, the trial court properly restricted him from presenting this defense to a jury.

In his last issue on appeal, Grove contends the trial court abused its discretion in denying him bail following his conviction.

Pennsylvania Rule of Criminal Procedure 521 provides that a trial court may release a defendant on bail, after he has been found guilty of a crime, under the following circumstances:

**(A) Before Sentencing**

\* \* \* \*

---

[22] Indeed, Grove's "argument" of these claims spans only two pages, and includes the entire text of the trial court's order granting the Commonwealth's motion in *limine*.  *See* Grove's Brief at 48-50.

(2) *Other Cases*

\* \* \* \*

(b) Except [when convicted of an offense punishable by death or life imprisonment cases,] when the aggregate of possible sentences to imprisonment on all outstanding verdicts against the defendant within the same judicial district can exceed 3 years, the defendant shall have the same right to bail as before verdict unless the judge makes a finding:

(i) that no one or more conditions of bail will reasonably ensure that the defendant will appear and comply with the conditions of the bail bond; or

**(ii) that the defendant poses a danger to any other person or to the community or to himself or herself.**

**The judge may revoke or refuse to set bail based upon such a finding.**

**(B) After Sentencing**

\* \* \* \*

(2) Except [when convicted of an offense punishable by death or life imprisonment cases,] when the sentence imposed includes imprisonment of 2 years or more, the defendant **shall not have the same right to bail as before verdict, but bail may be allowed in the discretion of the judge**.

Pa.R.Crim.P. 521(A)-(B) (some emphasis supplied). Furthermore, the Rule provides that when a trial court refuses or revokes bail after conviction, it must state "on the record the reasons for this decision." Pa.R.Crim.P. 521(C).

In the present case, Grove was released on $25,000 bail at the time of his preliminary arraignment. However, after the trial court found him guilty

of persons not to possess firearms, the Commonwealth asked the court to revoke Grove's bail. The court considered argument by both the prosecutor and Grove's counsel, and ultimately revoked Grove's bail. The court explained it had "a couple of concerns," particularly with respect to Grove's criminal record, which included "a common thread" of alcohol-related incidents. N.T., 1/24/2014, at 78, 79. Specifically, the court stated, "it concerns me that perhaps there is a more severe [alcohol] problem here then [sic] what you would be readily admitting to me." *Id.* at 79. More importantly, the court feared for Grove's own personal safety, as well as for the safety of his neighbor, who testified against him. *Id.* at 81.

As noted above, prior to sentencing, Grove filed both a petition for bail pending appeal and a motion for bail for emergency medical treatment. The court denied both motions at the sentencing hearing. Grove then petitioned this Court for review of the trial court's order denying both motions. Thereafter, in a series of orders, this Court directed the trial court to provide reasons on the record for its denial of Grove's petition for bail. The trial court conducted several hearings to comply with this Court's directive, and ultimately, on March 21, 2014, this Court denied Grove's petition for review. *See* Order, 3/21/2014.

Here, Grove contends the trial court abused its discretion when it denied him bail after his conviction. First, he notes that when he was granted bail pre-trial, he "appeared to all required court proceedings including his non-jury trial" when he knew he almost certainly faced a

- 34 -

conviction and a ten-year prison term after the court granted the Commonwealth's motion in *limine*. Grove's Brief at 50. Moreover, Grove asserts the trial court's reasons for denying him bail were based upon "unfounded and unsubstantiated" accusations made by the Commonwealth during his trial. *Id.* at 51. Grove also argues the court abused its discretion in denying him bail to obtain medical treatment for a hernia and stage 4 prostate cancer when he maintained private health insurance that would have paid for his treatment and would have had the help of family members to assist him in securing treatment and recovery. *Id.* at 56.

Our review of the record reveals no abuse of discretion on the part of the trial court. First, after Grove's conviction, the Commonwealth asked the trial court to revoke his bail. Pursuant to Rule 521(A)(2)(b)(ii), the court determined that Grove posed a danger to himself and to the community, and granted the Commonwealth's request. Based on Grove's criminal record, which included three DUI convictions, the facts underlying his present conviction, and the trial court's comments following Grove's trial, we do not find the trial court abused its discretion when it revoked Grove's bail before his sentencing hearing. *See* N.T., 1/24/2014, at 78-82.

Second, after Grove was sentenced to a term of five to 10 years' imprisonment, he did not have the same right to bail as before the verdict. *See* Pa.R.Crim.P. 521(B)(2) Rather, pursuant to Rule 521, after a defendant is sentenced to a term of imprisonment of two or more years, "bail may be allowed in the discretion of the trial judge." *Id.* Again, we find no abuse of

discretion on the part of the trial court. In addition to the concerns the court expressed at the time it entered the verdict, the Commonwealth presented the testimony of two of Grove's neighbors, who both expressed their fear of Grove.[23] One neighbor testified that Grove drove up and down their private road "like it was a main highway" and had "no respect or consideration for [anyone], shooting his gun all hours of the night and day[.]" N.T., 2/20/2014, at 36-38. McCloskey also testified that Grove threatened to kill her and her son. *Id.* at 38. Although Grove presented dozens of letters in support of his character, the court acted within its discretion when it credited the testimony of the Commonwealth's witnesses. Accordingly, we, again, find the trial court did not abuse its discretion in denying Grove's petition for bail pending appeal after sentencing.

Lastly, with respect to the court's denial of Grove's motion for bail for emergency medical treatment, the trial court provided the following rationale in its opinion:

> [O]n Februrary 13, 2014, [Grove] filed a Motion to Set Bail, this time seeking that he be released from Centre County Correctional Facility for emergency treatment of his hernia.[1] … On February 21, 2014, this Court denied the … motion for bail. … The Motion for Bail was also initially denied because [Grove] did not present any information concerning when he would be scheduled for surgery, with what surgeon, or where. After his non-jury trial and after bail was revoked, he contended he had a

_____

[23] One of those neighbors was the Commonwealth's trial witness, Sherry McCloskey.

hernia which required "emergency" surgery. Yet, in the attachment to his motion, the Progress Note dated January 8, 2014 indicated that [Grove] had known he should have surgery since the appointment in early January yet he did nothing to move forward the surgery. He apparently aggravated the hernia and waited three weeks while having increased pain before seeing the doctor. The Progress Note also indicated he had the hernia for "several years." This Court did notify the Centre County Correctional Facility regarding the serious nature of the hernia and the need for surgery. However, this Court felt [Grove] posed a risk to the community including his neighbor, the Commonwealth's witness. Because [Grove] did not treat his hernia as an emergency and provided no information regarding the specifics of the surgery he argued was emergency, this Court denied his motion initially.

_____

[1] In his [concise statement], at paragraph 11, [Grove] complains that this Court denied his motion for emergency medical treatment for stage 4 prostate cancer. This Court never denied a motion for emergency bail for treatment of prostate cancer. It is this Court's understanding that it was very sadly discovered during his pre-op testing for the hernia repair surgery that [Grove] suffers from prostate cancer.

_____

When arrangements were made and information provided from his surgeon, Dr. Duncan, [Grove] was permitted furlough on April 29, 2014 to have hernia repair surgery at Geisinger Gray's Woods in State College, Pennsylvania.

Trial Court Opinion, 9/26/2014, at 8-9.

We again detect no abuse of discretion. The trial court was, justifiably, initially skeptical of Grove's characterization of his medical issue as necessitating emergency surgery when it appeared Grove had suffered from the condition for years. However, once a treatment plan was in place, the court granted Grove furlough to have the surgery.

Further, with respect to Grove's cancer diagnosis, the trial court explained that the cancer was discovered during Grove's pre-operative testing for his hernia surgery. *See id.* Although some of Grove's medical records included a notation that Grove was suffering from Stage 4 prostate cancer, during the June 16, 2014, bail hearing, a prison physician testified that Grove was scheduled to meet with an oncologist the next day. *See* N.T., 6/16/2014, at 4. Accordingly, any release for treatment before that consultation would have been premature. Therefore, we find the trial court properly denied Grove's motion for bail for emergency medical treatment.

Because we have concluded that none of the claims raised on appeal warrant relief, we affirm Grove's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2015